M. GROH'S SONS, Appellant, *v.* JULIA A. GROH, as Executrix of JOHN GROH, Deceased, Respondent.

1. EVIDENCE — THE SPECIFIC GROUND OF OBJECTION TO EVIDENCE SHOULD BE STATED. When evidence is immaterial and is objected to on that specific ground, the objection is well taken because it points out the precise ground upon which the evidence should be excluded, and that is all the objector is required to do. Evidence which is immaterial and is also incompetent and irrelevant may properly be objected to on all or either of these grounds; if incompetent, but neither immaterial nor irrelevant, or *vice versa*, the precise grounds of the objection should be stated, for the reason that if it is inadmissible upon one ground and is objected to upon another ground, the trial court is not advised of the true reason for its rejection and the objector is held to have waived it.

2. SAME. Where upon the trial of an action the plaintiff specifically objects to evidence as immaterial, which evidence is so clearly immaterial as to suggest its incompetency as well as its irrelevancy, its reception constitutes reversible error.

3. TRIAL — WHEN ERROR IN ADMISSION OF EVIDENCE NOT CURED BY CHARGE. The mere acquiescence of the trial court in plaintiff's request to charge does not cure erroneous rulings in the admission of evidence, where the evidence is not stricken out and the jury are not instructed to disregard it.

4. Error in Admission of Defendant's Pleading Cured by Its Subsequent Withdrawal. An alleged error of the trial court in permitting the defendant's pleading to be put in evidence is cured by its subsequent withdrawal from the record.

*M. Groh's Sons* v. *Groh*, 80 App. Div. 85, reversed.

(Argued November 23, 1903; decided December 8, 1903.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 26, 1903, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank S. Black, Henderson Peck* and *Thomas F. Keogh* for appellant. The judgment herein should be reversed for the reception of illegal, immaterial and incompetent evidence, and the improper conduct of the trial, whereby the matters in issue were obscured and lost sight of, and the jury misled and prejudiced against the plaintiff. (*Dilleber's Case*, 69 N. Y. 260; *Church* v. *Howard*, 79 N. Y. 415; *Sherman* v. *R. R. Co.*, 106 N. Y. 547; *Matter of Eysaman*, 113 N. Y. 71; *Matter of Smith*, 95 N. Y. 527; *Foote* v. *Beecher*, 78 N. Y. 158; *Jefferson* v. *R. R. Co.*, 132 N. Y. 478; *Erben* v. *Lorillard*, 19 N. Y. 302; *Coleman* v. *People*, 58 N. Y. 561; Abbott's Tr. Brief, 300; *Cosselman* v. *Dunfee*, 172 N. Y. 507.) The errors committed in the admission of this evidence were not cured, either by the manner in which it was received or the subsequent action of the court in relation thereto. (Baylies' Tr. Prac. 208; *Robinson* v. *N. Y. El. R. R. Co.*, 175 N. Y. 219; *Holmes* v. *Moffat*, 120 N. Y. 159; *Eldredge* v. *Eldredge*, 79 Hun, 511; *Anderson* v. *R. R. Co.*, 54 N. Y. 341.)

*Abram I. Elkus* and *Carlisle J. Gleason* for respondent. There was no valid exception to the charge or rulings upon requests to charge. (*S. El. L. Co.* v. *C. Nat. Bank*, 52

Hun, 575; 127 N. Y. 517; *Hall* v. *Herter Bros.*, 83 Hun, 19; 90 Hun, 280; 157 N. Y. 694; *Outterson* v. *Paper Co.*, 49 N. Y. S. R. 556, 559; *Whitehead* v. *O'Sullivan*, 12 Misc. Rep. 577; *Burke* v. *Lincoln*, 28 Misc. Rep. 202; *Melledge* v. *B. I. Co.*, 5 Cush. 158; *State ex rel.* v. *S. O. Co.*, 49 Ohio St. 137; *Jordan* v. *Collins*, 107 Ala. 572; *Wood* v. *W. C. Co.*, 56 Conn. 87; *Handley* v. *Stutz*, 139 U. S. 417; 21 Am. & Eng. Ency. of Law [2d ed.], 866.) There are no valid exceptions to rulings upon the admission or exclusion of evidence. (*Atkins* v. *Elwell*, 45 N. Y. 753; *Briant* v. *Trimmer*, 47 N. Y. 96; *Chester* v. *Dickerson*, 51 N. Y. 1, 13; *McKeon* v. *See*, 51 N. Y. 300; *Bank* v. *Kelly*, 57 N. Y. 34, 49; *Daly* v. *Byrne*, 77 N. Y. 182, 189; *Ward* v. *Kilpatrick*, 85 N. Y. 413; *Bank of New York* v. *S. Nat. Bank*, 170 N. Y. 1; *Philips* v. *Railway*, 12 App. Div. 283; *Horn* v. *Steamboat Co.*, 23 App. Div. 206; *Charlton* v. *Rose*, 24 App. Div. 485.)

WERNER, J. This action was brought to recover of the defendant's testator various sums of money aggregating in all $15,515.71. The complaint sets forth three separate causes of action. The first two proceed upon the theory that the defendant's testator was indebted to the plaintiff in the sum of $8,000 and upwards, for moneys received and not accounted for. The third alleges that he received from the plaintiff $6,763.17 upon representations that were not true. Upon the questions of fact submitted to the jury the defendant was given the verdict. The judgment entered thereon was affirmed in the Appellate Division by a divided court. There was evidence before the jury upon which to base their verdict and, therefore, no questions are presented which this court can review except upon exceptions taken during the course of the trial.

The bearing of these exceptions will appear from a short statement of the facts. Prior to December 30th, 1896, M. Groh's Sons had been a copartnership and conducted a brewery in the city of New York. The firm was a family affair and origi-

nally consisted of Michael Groh, Julia A. Groh, his wife, and their two sons, Michael J. and John Groh. Michael, the father, died in 1895 and Michael J., the son, in 1896, leaving Julia A. and John, her son, the original defendant herein, the sole owners of the business. On December 30th, 1896, the plaintiff corporation was formed under the name of M. Groh's Sons and took over all the assets of the partnership, including all debts and claims due to, or owed by it. The capital stock of the corporation was $600,000 which was divided equally between Julia A. and John Groh. Bonds were issued to the amount of $500,000 and these were also divided equally between them.

On December 16th, 1897, J. George Flammer bought all of the stock and bonds belonging to Julia A. and also one share of stock belonging to John Groh. Pending this action, John, the original defendant, died, and his executrix, the present defendant, was substituted in his place.

The first cause of action in the complaint sets forth that before the corporation was formed John Groh, deceased, had become indebted to the partnership in the sum of $7,175.02, for which he had failed to account. The second cause of action sets forth that as president and treasurer of the plaintiff and between January 1st and April 17th, 1897, he misappropriated $1,577.53 belonging to the plaintiff. In the third cause of action it is alleged that on or about the seventeenth of April, 1897, he received from the corporation, without consideration therefor, the sum of $6,763.16, upon the representation that the corporation was indebted to him in that amount.

The answer contains a general denial of the material allegations of the complaint, and several separate defenses. These alleged defenses are, in substance, that one J. George Flammer was the attorney of Julia A. Groh and of the firm as well as of the corporation that succeeded it, and that as such attorney Flammer was fully conversant with all the business affairs of each; that the sums of money claimed in the first and second causes of action in the complaint set forth, were

expended by John Groh in the business of the firm and cor-
poration; that when Julia A. Groh transferred to Flammer
her stock and bonds in the corporation, a written agreement
was entered into by which it was covenanted that the former
should cancel, discharge and pay all debts and liabilities of
the corporation; that as a part of the consideration of the
transfer Flammer executed and delivered to Julia A. Groh
his promissory note for $50,000, payable November 1, 1897;
that immediately after such transfer and on or about April
17th, 1897, Flammer was elected a director and afterwards
president of the corporation and assumed entire charge of its
business affairs; that when the note for $50,000 became due
Flammer refused to pay it, because he claimed the amounts
set forth in the complaint were liabilities of the corporation
and should be deducted from the amount of the note; that an
amicable agreement was entered into between Flammer and
Julia A. Groh, under which, in consideration of $10,000, the
sums set forth in the complaint were satisfied and the plaintiff
received the $10,000 in full satisfaction and discharge of such
claims.

As a separate defense to the third cause of action it was
alleged that the plaintiff, by and with the consent of Flammer
and Julia A. Groh, paid to the latter and John Groh, the
original defendant, each the sum of $3,381.68 as a dividend
upon the earnings of the plaintiff then due to them.

As tending to sustain the allegations of the answer, the
defendant was permitted to introduce in evidence the agree-
ment under which Flammer purchased from Mrs. Groh for
$150,000 her stock and bonds of the plaintiff corporation,
of the par value of $550,000 in which she stipulated to pay
all the debts of the firm and the corporation. Counsel for the
plaintiff objected to this as immaterial, and added, " What
possible materiality a transaction between Mrs. Groh and Mr.
Flammer can have on the issue in this action is difficult for me
to see." The objection was overruled and an exception taken.
Again, the defendant introduced evidence showing that in
July, 1898, John Groh, deceased, ceased to be an officer of

the plaintiff, and that Flammer, who controlled a majority of the stock, then elected himself president and treasurer of the corporation, and he with his two brothers-in-law, one of whom was vice-president, composed the board of directors. The defendant proceeded to show that up to the time when John Groh ceased to be an officer of the plaintiff, none of the officers thereof had received salaries. This latter part of the evidence was objected to as immaterial, the objection was overruled and an exception taken by plaintiff. After the introduction of this testimony defendant's counsel asked the witness the question, "When did the officers first begin to receive salaries? Mr. Nathan (plaintiff's counsel): Objected to as immaterial. How does that have any bearing upon the case? The Court: It may have no bearing at all, but I think it proper to allow it in the case for what it may hereafter be worth. Mr. Nathan: Exception. * * * Q. You were the secretary and kept the minutes? A. Yes, sir. Q. Will you look at the minute book and tell me when the officers first began to receive salaries and what they received? Same objection, ruling and exception." This was followed by evidence adduced by the defendant disclosing that Flammer as president received $15,000 a year, which was afterwards increased to $25,000; that his brother-in-law, as vice-president and cashier, received $5,200 a year, and that during all this time John Groh continued to own one-half of the bonds of the plaintiff and one-half of the stock, less one share, and that no dividends were paid on the stock. All this was under the objection of the plaintiff that it was immaterial, and exceptions were duly taken to the rulings of the court admitting the evidence. Again, the defendant was permitted to introduce in evidence a written release from Flammer individually to Julia A. Groh, purporting to release her from all debts and obligations he had against her, excepting debts or obligations arising out of the agreement between them for the purchase by the former of the stock and bonds from the latter. Counsel for the plaintiff objected to this paper as immaterial, and in doing so pointed out to the court that it was an indi-

vidual release of Flammer and not the act of the plaintiff. The court said: " It is received. The jury should have the entire transaction before them. Mr. Nathan: It has nothing to do with this transaction. The Court: I think it has a great deal to do with it; it involves the $10,000 the corporation is endeavoring to get from this estate.   *   *   * Mr. Nathan: I except."

The record contains other exceptions of a similar character, but we need not discuss them in detail, since those set forth clearly disclose the extent to which evidence was admitted that was not only foreign to the real issues in the case, but which, in the nature of things, must have been prejudicial to the plaintiff. The issues to be tried were those tendered by the complaint and fairly controverted by the answer. The allegations of the answer relating to the personal transactions between Flammer and the defendant, and to the subsequent proceedings of the plaintiff corporation in the payment of salaries to its officers, were not germane to the issues in the case. This, indeed, is conceded in the prevailing opinion of the learned Appellate Division, but the judgment was affirmed because the objections to the improper evidence were regarded as insufficient.

We entertain a different view. When evidence is immaterial and is objected to on that specific ground, the objection is well taken, because it points out the precise ground upon which the evidence should be excluded, and that is all the objector is required to do. It frequently happens that evidence which is immaterial is also incompetent and irrelevant, and in that event it may properly be objected to on all or either of these grounds. It is equally true that evidence may be incompetent, but neither immaterial nor irrelevant, or *vice versa,* in which case the objection may and should be urged upon the precise ground that provokes it. And the reason of the rule is plain. If evidence is inadmissible upon one ground and is objected to upon another ground, the trial court is not advised of the true reason for its rejection and the objector is held to have waived it.

In the case at bar some of the evidence objected to was

immaterial, irrelevant and incompetent. It might have been objected to on all or each of these grounds. It was objected to only as being immaterial. It was, however, so utterly and clearly immaterial as to point out clearly its incompetency as well as its irrelevancy. The objection having been taken upon a ground that was proper and precise, and being obviously suggestive of the other two grounds upon which the evidence might have been excluded, we think the cases cited by the learned Appellate Division in support of the conclusion that the objections herein were not properly taken have no application. In those cases (*Turner* v. *City of Newburgh,* 109 N. Y. 301; *Atkins* v. *Elwell,* 45 id. 753; *Ward* v. *Kilpatrick,* 85 id. 413; *Charlton* v. *Rose,* 24 App. Div. 485) the objections were either general in form or placed upon one ground, while the evidence was inadmissible only upon different and distinct grounds which were not urged, and, hence, the court was not apprised of the real ground upon which the evidence should have been excluded.

The learned counsel for the defendant further relies upon the contention that the erroneous rulings herein were cured by the charge of the court made in response to the requests of the plaintiff's counsel: (1) "That the release by Flammer to Julia A. Groh, did not release John Groh from liability in any of the claims made by the plaintiff in this action," and (2) that "the amount of Mr. Flammer's salary has no bearing upon the issues in this action." The difficulty with this claim is that while the request was submitted in the language above quoted, the court did nothing more than to respond, "I so charge." The evidence was not stricken out. The jury were not instructed to disregard it. In the face of these facts the mere acquiescence of the court in the requests above quoted cannot be said to have been sufficient to remove the impression which the evidence upon these subjects must have left on the minds of the jury. (*Ives* v. *Ellis,* 169 N. Y. 85; *People* v. *Smith,* 172 N. Y. 210, and cases there cited.)

As to the alleged error of the trial court in permitting the defendant's pleading to be put in evidence, it is enough to say

that we think it was cured by its subsequent withdrawal from the record.

The judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment reversed, etc.