LAND FILLING AND IMPROVEMENT COMPANY, Respondent, *v.* HENRY STEERS, INC., Appellant.

(Argued March 21, 1932; decided April 26, 1932.)

*Charles L. Woody, Raymond M. White* and *Herbert P. Carter* for appellant. At the time plaintiff claims that payments were due and payable, plaintiff could not perform its part of the contract because it was not in possession of all of the fill which it had sold to defendant. (*Wigand* v. *Bachmann Bechtel Brewing Co.*, 222 N. Y. 272; *Eddy* v. *Davis*, 116 N. Y. 247.) Plaintiff failed to prove that the contract was in existence during the eight months for which plaintiff claims that defendant owes. The undisputed proof is that the contract was not in existence because it had been terminated by notice. (*Delaware Trust Co.* v. *Calm*, 195 N. Y. 231; *Fulton* v. *Varney*, 117 App. Div. 572; *Bogardus* v. *New York Life Ins. Co.*, 101 N. Y. 328.) Plaintiff received actual notice of the termination of the contract. (*Lomer* v. *Meeker*, 25 N. Y. 361; *Kelly* v. *Burroughs*, 102 N. Y. 93; *Plyer* v. *German American Ins. Co.*, 121 N. Y. 689; *Claflin* v. *Lenheim*, 66 N. Y. 301.)

*Thomas Cradock Hughes* for respondent. The contract was not terminated by defendant. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 196; *Schoellkopf* v. *Coatsworth*, 166 N. Y. 77; *Helgar Corp.* v. *Warner's Features, Inc.*, 222 N. Y. 449; *Ferguson* v. *Chuck*, 236 N. Y. 149; *Losei Realty Corp.* v. *City of New York*, 254 N. Y. 41.) Plaintiff did not breach the contract by failing to prevent the removal

by others of some of the fill subsequent to the making of the contract. (*Robertson* v. *Ongley Electric Co.*, 146 N. Y. 20; *Becker* v. *Frasse & Co.*, 255 N. Y. 10.)

CRANE, J. The appeal in this case is determined by the meaning of two agreements. The plaintiff, a New Jersey corporation, on September 24, 1918, entered into a written contract with the defendant, a New York corporation, providing for the sale by the plaintiff to the defendant of all the fill above the grade of the adjoining streets on the premises of the plaintiff at a price of twelve cents per cubic foot, the fill to be removed by the defendant and paid for monthly in cash. The fill was material consisting principally of ashes dumped for a number of years on the premises of the plaintiff at the Newark meadows on Newark bay, New Jersey, for the purpose of reclaiming the swamp land and marsh.

At the outset certain things must be emphasized about this original agreement. It is the paragraph reading as follows:

"'In order to determine the quantity of the fill covered by this contract, it is agreed that before any of it is removed, the same shall be measured as it is now in place, by two persons, one appointed by the vendor and the other by the vendee, and if they cannot agree, these two shall appoint a third competent person, and the measurements of the majority shall determine the quantity. Thereafter the monthly payments hereinbefore mentioned, shall be made in accordance with the measurements of the quantities removed during the month by the U. S. Government Engineers, according to their certificate, the said fill being designed to be used by the vendee for U. S. Government work, unless the entire quantity shall not be required for such work, in which event the measurements shall be determined in the same manner as hereinbefore provided for determining the quantity of the material as it is now in place before any part thereof is removed under this contract."

On November 21, 1919, the parties entered into a new or modified contract reading in part as follows:

" I. For the extension of time to take said fill, the vendee herewith pays the vendor the sum of Two Thousand Five Hundred ($2,500) Dollars, the receipt whereof is hereby acknowledged, and agrees to pay to the order of the vendor One Thousand ($1,000) Dollars on the first day of each and every month beginning November 1, 1919, for at least twelve (12) consecutive months, and thereafter on the first day of each month until the termination of the contract. If the vendee shall commence to take the fill as provided in said contract of September 24, 1918, it shall receive credit for said Twenty Five Hundred ($2,500) Dollars against the price of fill taken by it, and it shall also receive credit for the said One Thousand ($1,000) Dollars paid by it for any month against the price of fill taken by it in the month in which it makes payment of said One Thousand ($1,000) Dollars, and it shall pay the vendor the balance of the price as provided in said contract.

" II. If the vendee shall notify the vendor on or after November 1st, 1920, that it cancels this contract, thereupon the vendee's obligation to make said payments of One Thousand ($1,000) Dollars a month as well as the vendee's right to take fill shall cease and terminate."

The vendee took no fill, but, commencing with November, the date of the amended agreement, paid besides the $2,500 therein mentioned, the $1,000 every month for twenty-two months, up to and including August of 1921, making a total amount of $24,500. At the time of the last payment the plaintiff was informed through its representative that as the defendant could not use the fill for the purpose for which it had been purchased, the defendant would have to terminate the contract. This notice was given to Mr. Ivins, the treasurer of the plaintiff, by Steers, the vice-president and treasurer of the defendant, and is not in any way contradicted by the

plaintiff's testimony. By letter dated April 3, 1922, the plaintiff notified the defendant that for failure to pay installments it canceled the contract and thereupon sued for $8,000, the amount due for the months since the last payment of August 1, 1921, to wit, September, 1921, to April, 1922, inclusive.

The Appellate Division by a divided court has affirmed a judgment for the plaintiff, but we find a number of reasons why this cannot stand. In the first place, it was agreed that before any fill should be removed it was to be measured in the place where it was by two persons, one approved by the vendor and the other by the vendee. There was never any measurement made and no attempt made by the vendor to carry out this condition precedent. In the second place, the amended contract provided that the vendee could cancel it by notifying the vendor after November 1, 1920. No form of notice was required. It could be by parol or in writing. Sufficient that the plaintiff was notified of the defendant's determination to cancel. Steers, the officer of the defendant at the time of the last payment, notified Ivins, the treasurer of the plaintiff, that the defendant canceled the contract as it could not use the fill. This evidence is uncontradicted. In the third place, the plaintiff could not perform, as more than one-quarter of the fill had been removed and carted away by others than the defendant and without the defendant's knowledge and consent. The contract on which the plaintiff sues sold *all* the fill to the defendant and not a part.

The other objection raised by the appellant, that the plaintiff being a foreign corporation, was doing business in this State without procuring the certificate required by section 218 of article 13 of the General Corporation Law (Cons. Laws, ch. 23), and, therefore, could not sue, we need not pass upon, as the evidence is somewhat slim and contradicting regarding the nature of the plaintiff's business and the extent to which it was conducted in this

State. (*International Fuel & Iron Corp.* v. *Donner Steel Co.*, 242 N. Y. 224.)

For the reasons here stated the judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not sitting.

Judgments reversed, etc.