The People of the State of New York ex rel. Wedgewood Realty Co., Inc., Appellant, against Thomas M. Lynch et al., Constituting the State Tax Commission, Respondents.

(Argued June 5, 1933; decided July 11, 1933.)

*Isidor Sack* and *A. Loeb Salkin* for appellant.

*John J. Bennett, Jr., Attorney-General* (*Wendell P. Brown* of counsel) for respondents.

POUND, Ch. J.   This is a certiorari proceeding to review a determination of the State Tax Commission upon the relator's application for a revision and resettlement of its assessment of an annual franchise tax under section 182 of the Tax Law (Cons. Laws, ch. 60) for the year 1927, measured by the dividends declared upon capital stock during the calendar year 1926.

Section 182 of the Tax Law, as amended by chapter 674 of the Laws of 1926, provided in part: "For the privilege of exercising its corporate franchise or of holding property in this state every domestic corporation, joint stock company or association shall pay annually, in advance, an annual tax to be computed upon the basis of the amount of its capital stock within this state during the preceding year, and upon each dollar of such amount. The measure of the amount of capital stock in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business. Provided, however, that in the case of a corporation taxable hereunder only for the privilege of holding property, the measure shall be such a portion of the issued capital stock as the gross assets located within this state bear to the gross assets wherever located. For the purposes of taxation, the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the property represented by such stock is located.

" Every corporation, joint stock company or association, subject to taxation under this section shall, in any event, pay a minimum tax of not less than ten dollars nor less than one mill on each dollar of such a portion of the net value of its capital stock, which net value for the purposes of this section shall be deemed to be not less than five dollars per share, computed upon the portion of the net value of its issued capital stock determined upon such of the bases hereinbefore provided for the measurement thereof as is applicable. The term ' net value ' as used in this section shall be construed to mean not less than the difference between a corporation's assets and liabilities, and not less than the average price at which such stock sold during said year. But if the dividends made or declared on the par value of any kind of capital stock during any year ending with the thirty-first day of December amount to six or more than six per centum, the tax upon such kind of capital stock shall be at the rate of one quarter of a mill for each one per centum of dividends made or declared upon the par value of the capital stock during said year, unless such a tax be less than the minimum tax hereinbefore provided in this section, and the tax commission shall, for such purpose, make a fair and equitable apportionment of the assets of the corporation, joint stock company or association, between the different kinds of stocks."

The Tax Commission characterizes the transaction before us for review as a scheme of evasion for the distribution of the accumulated surplus of relator, constituting a dividend in fact although not in form. The relator relies on the principle that there is no evasion because there is no law imposing a tax on the transaction. Such is the issue presented.

Prior to the organization of relator, the Wedgewood Realty Co., Inc. (old), was a close corporation engaged in the business of owning and managing real estate. At the close of the year 1926 it had assets of the value of

$1,937,806.66, consisting of real estate at assessed value $1,854,200; cash, $15,454.81, and securities, $68,151.85. Its liabilities amounted to $1,038,060, consisting of mortgage indebtedness, $1,038,000, and accounts payable, $60, making its net worth $899,746.66. Its capital stock outstanding was $454,200, of which but $407,808.87 had been issued for cash or property, the difference being a capitalization of good will. The corporation thus had an accumulated surplus over and above the capital contributed by its stockholders of $491,937.79, as found by the Commission although the relator sets the figures at $176,908.78.

On December 28, 1926, the stockholders of the old Wedgewood Realty Co. organized a corporation under the laws of this State bearing the name of H. F. K., Inc. On the same day the stockholders of the old Wedgewood Realty Co. transferred to H. F. K., Inc., all of the outstanding stock of the old Wedgewood Realty Co., which thereupon became a subsidiary of H. F. K., Inc. In exchange for the said stock, H. F. K., Inc., issued and delivered to the said stockholders of the old Wedgewood Realty Co. 475 shares of its own capital stock without par value and $600,000 in amount of its own debenture bonds.

Two days later, on December 30, 1926, H. F. K., Inc., being the owner of all the stock of the old Wedgewood Realty Co., merged the latter and, by the certificate of merger on that day filed in the office of the Secretary of State, assumed the latter's name. H. F. K., Inc., under the name so assumed, is the relator in the present proceeding and will be hereafter referred to as the new Wedgewood Realty Co., or the relator. No new assets were acquired in connection with the reorganization, the stockholders remained identically the same, and no interruption occurred in the transaction of the corporate business.

The State Tax Commission has proceeded on the theory that this distribution of the accumulated surplus by means of the bond issue constituted a dividend in fact on

the issued capital stock of $454,200 at the rate of 108.3086%; that as the Tax Law provides a one-quarter of a mill rate for each one per centum of dividend made or declared the tax would be based on $454,200 at the rate of .02707715% and the tax would amount to $12,298.44. It assessed a franchise tax accordingly.

We think the principle adopted by the Tax Commission was correct. The direct result of the transaction of December 28–30, 1926, was the exchange of par value stock of the old corporation for bonds of the face value of $600,000 and stock of the new corporation without par value. No change occurred in the business, the assets, the stockholders or even in the corporate name. Each shareholder had in addition to his stock, a gain in the form of bonds in place of his former indivisible and contingent interest in the corporate surplus. " It was in substance and effect, not merely in form, [in part] a dividend of profits by the corporation, and individual income to the stockholders." (*Rockefeller* v. *United States,* 257 U. S. 176, 184.) It included in fact a distribution of profits. (*People ex rel. Fox Film Corp.* v. *Loughman,* 259 N. Y. 30.)

The relator argues that no dividend was paid because the stockholders were no richer after than before the reorganization (*Eisner* v. *Macomber,* 252 U. S. 189), but the bonds of the corporation represent a debt of the corporation rather than an interest in its assets. This was more than a mere splitting of the evidences of stock ownership. The amount which might have been distributed to stockholders in annual dividends was by this scheme of reorganization distributed all at one time.

It may be difficult, if we look at form rather than substance and effect, to regard this as a distribution of earnings by the new corporation, which had not been in business long enough to have any earnings. The answer is obvious. The old corporation earned the money and turned everything over to the new. The new corporation

took the assets as they were, *i. e.*, in part undistributed profits. " Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants." (*Weiss* v. *Stearn,* 265 U. S. 242, 254.) The courts should not be deluded by book-keeping devices. They will " deal with the substance of the transaction involved." (*Chicago, M. & St. P. Ry. Co.* v. *Minneapolis Civic Assn.,* 247 U. S. 490, 501.) The new corporation, technically a new entity, was a mere continuation of the old. Its organization will not be permitted to become an insurmountable obstacle in the way of collecting the tax. " Compliance with forms of law does not amount to absolution for fraud." (CRANE, J., in *Small* v. *Sullivan,* 245 N. Y. 343, 354.)

No formal declaration of dividends is necessary to make the distribution of corporate profits income for the purpose of taxation. (*People ex rel. Fox Film Corp.* v. *Loughman, supra.*)

The bond issue was not, however, in its entirety a distribution of earnings. So far as it represented a distribution of capital it was not a taxable dividend. The record on this point is not as complete as it should be. The amount of the surplus is not directly shown by the record. Unquestionably it was less than $600,000, the amount of the bond issue. The Tax Commission should restate the financial condition of the old Wedgewood Company at the time of the merger and restate the tax accordingly. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346, 352.)

The order of the Appellate Division should be modified by providing that the case be remitted to the State Tax Commission for a further hearing and a restatement of the tax in accordance with this opinion, without costs. (See 262 N. Y. 644.)

CRANE, KELLOGG, O'BRIEN and CROUCH, JJ., concur; LEHMAN, J., votes to reverse on the ground that no dividends were declared; HUBBS, J., not sitting.

Ordered accordingly.