UNITED STATES of America, Plaintiff,

v.

E. REGENSBURG & SONS, and Adele Regensburg, Executrix of the Estate of Isaac Regensburg, deceased, Defendants.

UNITED STATES of America, Plaintiff,

v.

E. REGENSBURG & SONS, and Sally Regensburg Perls Ross and Edward Bellette Regensburg, as Administrators c. t. a. of the Estate of Bellette Regensburg, deceased, Defendants.

United States District Court
S. D. New York.

Oct. 11, 1954.

J. Edward Lumbard, U. S. Atty., Thomas C. Burke, Asst. U. S. Atty., New York City, for plaintiff.

Carroad & Carroad, New York City, for Estate of Adele Regensburg, Theodore Propp, New York City, of counsel.

Paskus, Gordon & Hyman, New York City, for E. Regensburg & Sons, Charles H. Lieb & Robert R. Slaughter, New York City, of counsel.

Davis M. Zimmerman, New York City, for Estate of Bellette Regensburg.

RYAN, District Judge.

The Government in these two suits filed on February 24, 1949 seeks (1) judgment against the Estate of Isaac Regensburg, deceased, and the Estate of Bellette Regensburg, deceased, for unpaid income taxes assessed by the Commissioner of Internal Revenue against each of the decedents and this respective estate; (2) the setting aside of foreclosures by the corporate defendant E. Regensburg & Sons of alleged liens asserted by it on certain shares of its capital stock registered in the names of the decedents; (3) the adjudication of the lien of the United States for the unpaid income taxes of the decedents to be a valid lien against these shares, prior in preference to the claim of the corporate defendant, and, finally, (4) a judgment directing that a judicial sale of the stock be held and the proceeds of the sale applied first to the satisfaction of the Government's lien. This court has jurisdiction by virtue of 28 U.S.C.A. § 1340 and Int.Rev.Code, § 3678, 26 U.S.C.A. § 3678.

The suits by consent have been consolidated for purposes of trial.

Defendant E. Regensburg & Sons was incorporated in New York on April 6, 1903. Its entire capital stock of 1,000 common shares has always been held by members of the Regensburg family and its affairs have been under the control and management of that family. Edward Regensburg, the father, was president of the corporation until his death on June 18, 1910. The son, Mortimer, was elected president on July 13, 1910 and continued in that office at least through 1943; the son, Isaac, served as treasurer until his death, December 1, 1943; the son, Bellette, was secretary from July 12, 1910 until January 18, 1931 when he was elected vice president, which office he held to the date of his death, February 14, 1944.

This suit concerns the stock interests of Isaac and Bellette Regensburg and their dealings with the corporation.

Isaac Regensburg acquired 230 shares at the time of incorporation, 34 shares on September 1, 1931, and 4⅜ shares on October 30, 1940, thus owning a total of 268⅜ shares at the time of his death.

Bellette Regensburg acquired 50 shares at the time of incorporation, 30 shares on April 18, 1908, 34 shares on September 1, 1931, and 4⅜ shares on October 30, 1940; a total of 118⅜ shares at the time of his death.

The corporate ledgers carried accounts in the name of the father, Edward, and of each of his five sons, Mortimer, Isaac, Jerome, Melville and Bellette. To these accounts there were debited withdrawals

of funds by each of the individuals and amounts paid out on their behalf by the corporation; credited were salaries, dividends and other miscellaneous credit.

It was held in a suit involving the income tax liability for the years 1936 to 1940 inclusive of the four brothers, Mortimer, Isaac, Melville and Jerome Regensburg that. the payments through these years to them were taxable as "distribution out of earnings or profits accumulated," therefore as "dividends" paid to them, as that term is defined by Section 115(a) and (b) of the Revenue Acts of 1936 and 1938, Int.Rev.Code, § 115, 26 U.S.C.A. § 115. Regensburg v. Commissioner of Internal Revenue, 2 Cir., 1944, 144 F.2d 41, affirming 1 CCH T.C.Svce. 16,406, Dec. 13,138(M) (T.C. 1943), certiorari denied 1944, 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625. The corporate defendant herein was not a party to this prior tax litigation and the holding therein is not binding upon it.

On October 8, 1934 the stockholders of E. Regensburg & Sons, including Isaac and Bellette Regensburg, entered into an agreement pledging their stockholdings to the company as security for advances made to them, as well as for future advances. On or about that date, the stock certificates were delivered to the company, endorsed to that effect and have been retained by the company continuously since then.

The company caused the shares of Isaac and Bellette Regensburg to be sold at public auction at which the company purchased the shares.

No charge of fraud is made by the Government; reliance is placed upon Int. Rev.Code, § 115 (defining taxable corporate distributions) and §§ 3670–3672, 26 U.S.C.A. §§ 3670–3672. Section 3670 provides that upon failure to pay taxes after demand a lien shall arise "in favor of the United States upon all property and rights to property, whether real or personal, belonging" to the delinquent taxpayer; § 3672 provides further that until filed the tax lien shall be invalid "as against any mortgagee, pledgee, purchaser, or judgment creditor".

The Government filed tax lien notices against the estates of Isaac and Bellette Regensburg on January 17, 1945.

■ The issue is—What rights to the stock of E. Regensburg & Sons did Isaac and Bellette Regensburg, or their estates, have on the date the tax lien was filed? The rights of the Government can rise no higher than those of the delinquent taxpayers. U. S. v. Winnett, 9 Cir., 1947, 165 F.2d 149, Karno-Smith Co. v. Maloney, 3 Cir., 1940, 112 F.2d 690.

■ Sections 3670 and 3672 have been enacted within the scope of the taxing power granted to Congress under the Constitution. Insofar as these sections may conflict with state law, under the Supremacy Clause, state law must yield. But Congress has left undefined the meaning to be attributed to the phrase "rights to property", U. S. v. Anders Contracting Co., Inc., D.C.W.D.S.C., 1953, 111 F.Supp. 700, 702, and to the term "pledgee." Indubitably, Congress could, pursuant to its taxing power, have given federal content to these terms as it has to others, e. g. Int.Rev.Code, §§ 166 (income of revocable trust taxable to settlor), 811(c) (gifts taking effect at death), 811(d) (revocable transfers), 811(f) (powers of appointment), 811(l) (gifts in contemplation of death). 26 U.S.C.A. §§ 166, 811(c, d, f, l). An investigation of the available legislative history of the Acts of July 13, 1866, c. 184, § 9 (the original predecessor enactment of § 3670), of March 4, 1913, c. 166 (the original predecessor enactment of § 3672), and of June 29, 1939, § 401 (which added the term "pledgee" to § 3672) offers no clue to the Congressional intent whether federal or state law applies. See U. S. v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (concurring opinion.)

The decisions of the Supreme Court offer little guidance too, for though the general question has been presented on numerous occasions federal law has at times been applied, e. g. Commissioner of Internal Revenue v. Tower, 1946, 327

U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; U. S. v. Pelzer, 1941, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; Morgan v. Commissioner, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119; Burnet v. Harmel, 1932, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; see U. S. v. Security Trust & Savings Bank, supra, 340 U.S. 49, 71 S.Ct. 111; and on other occasions state law has been given operative effect, e. g. Reconstruction Finance Corp. v. Beaver County, 1946, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172; Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Helvering v. Fuller, 1940, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082; Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Crooks v. Harrelson, 1930, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; U. S. v. Cambridge Loan and Building Co., 1928, 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180. While in Burnet v. Harmel, supra, it was said,

"Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation." 287 U.S. 110, 53 S.Ct. 77.

in Reconstruction Finance Corp. v. Beaver County, supra, the Court in looking to state law, spoke thusly,

"We think the Congressional purpose can best be accomplished by application of settled state rules as to what constitutes 'real property' so long as it is plain, as it is here, that the state rules do not effect a discrimination against the government, or patently run counter to the terms of the Act. Concepts of real property are deeply rooted in state traditions, customs, habits, and laws." 328 U.S. 210, 66 S.Ct. 995.

And we think that, in the context of this case, the Beaver County line of cases represents the better view. "Property" is a term embracing within its definition many juridicial relationships, charged with the meaning of hundreds of years of usage in the common law of England as received in the law of the states, and given further content by the legislatures and courts of the states prior to and since the Revolution. Examples abound of Congress incorporating state law by reference into federal law, a familiar one being under the Federal Tort Claims Act. See Hart & Wechsler, The Federal Courts and the Federal System 457 (1953). Considering too that Congress provided in § 3672(a)(1) that the tax lien be filed accordingly as the states provide and only with the United States district court if a state has not authorized the filing with it, § 3672(a)(2), we believe that state law should apply. U. S. v. Hutcherson, 8 Cir., 1951, 188 F.2d 326; U. S. v. Winnett, 9 Cir., 1947, 165 F.2d 149; cf. Rowen v. Commissioner, 2 Cir., 1954, 215 F.2d 641; see Cahn, Local Law in Federal Taxation, 52 Yale L.J. 799 (1943).

There being no conflict of laws problem, the law then to be applied is that of New York.

Failure to comply with the formal provisions of the New York Lien Law, McKinney's Consol.Laws, c. 33, 1 et seq., as to the establishment and foreclosure of the pledge lien is not raised as an issue by the Government, but they rather contend that no valid pledge was ever created because the withdrawals by Isaac and Bellette Regensburg were not loans, but in fact dividends.

The principles applicable to the determination of this issue are stated in the controlling decision of People ex rel. Fox Film Corp. v. Loughman, 1932, 259 N.Y. 30, 180 N.E. 885. In that case Fox Film contended that moneys received from its foreign subsidiaries were loans and not distributions of profits by way of divi-

dends. After holding that Fox Film and its subsidiaries were not exempted from the tax drawn in question as being wholly engaged in the purchase, sale or holding title to real estate, the Court of Appeals went on to hold that the moneys received from its foreign subsidiaries were not loans, but dividends. The court enumerated these factors:

"The sums were paid by the subsidiaries to their sole stockholder out of earnings or profits. The evidence supported a finding that they were properly considered as 'dividends received on stocks' * * * The so-called loans were not represented by notes or other evidences of indebtedness; they bore no interest and they were payable at no definite time. It was a fair assumption that they would never be called and that no distribution of such earnings as dividends would ever be made. No formal declaration of dividends is necessary to make the distribution of corporate profits income for the purpose of taxation. * * * A loan made with no intention that it be repaid cannot be converted into an asset when it is in fact a distribution of profits. * * *" 259 N.Y. 34, 180 N.E. 886.

Cf. Calder v. Graves, 3rd Dept., 1941, 261 App.Div. 90, 24 N.Y.S.2d 797, aff'd Mem. 1941, 286 N.Y. 643, 36 N.E.2d 688; see also People ex rel. Wedgewood Realty Co., Inc., v. Lynch, 1933, 262 N.Y. 202, 186 N.E. 673.

The difficult duty of characterizing the withdrawals of Isaac and Bellette Regensburg falls to this court, for as they are determined "dividends" or "loans" will crucially different legal consequences follow. Against the setting of the Fox Film case must the facts be viewed, by recourse to the actions of Isaac and Bellette Regensburg and the company prior to the commencement of suit by the Government in the Tax court. After that time their activities must obviously have been directed to affecting the outcome of the lawsuit then confronting them. Evidence of conduct post commencement of that suit was excluded at the trial because of this inherent unreliability. Furthermore almost forty years of dealings provided ample evidence of the manner in which the withdrawals were treated by these parties. In such a context evidence of actions post litem motam is unnecessary.

The Government has proved its case. The preponderance of the evidence viewed in its entirety reveals no intention on the part of the company to treat the withdrawals as binding obligations and the same must be said of Isaac and Bellette Regensburg. While they were alive the only credits to the accounts were undrawn salaries and dividends. These were, however, consistently less than the large withdrawals, so that the accounts showed steadily increasing debit balances. As was observed by the Court of Appeals,

"If the sums withdrawn were actually intended to be loans, it seems extraordinary that they should have been allowed to roll up for nearly forty years until they reached the staggering total of more than $3,000,000 * * *." Regensburg v. Commissioner, supra, 144 F.2d 44.

The only significant move on the part of the company to satisfy the alleged indebtedness of Isaac and Bellette Regensburg has been to foreclose upon the stock, but this was far inadequate to satisfy the amounts depicted as owing. Never were notes given to evidence the purported indebtedness, interest was never paid, and the testimony reveals that Isaac and Bellette Regensburg were able to withdraw whatever sums they chose merely by having the company cashier draw a check in the amount desired. See Ewing v. Commissioner, 2 Cir., 1954, 213 F.2d 438, 440. The withdrawals were made from earnings and surplus, the capital of the company remaining unimpaired. The withdrawals, if they be termed loans, contravened N. Y. Stock Corporation Law, McKinney's Consol.Laws, c. 59, § 59, and were *ultra vires;* though the Government in

this suit cannot avail itself of the statute since it is not a creditor of the corporation, this court can nevertheless discard the corporate fiction and look at these withdrawals for what they were. Since the Regensburg family at all times dominated the firm, in ownership and control, it would appear that Isaac and Bellette Regensburg, as well as the other family stockholders, continued to regard the company as the partnership it once was.

Bookkeeping entries, financial statements, minutes of stockholders' and directors meetings, and the 1934 pledge agreement, wherein the withdrawals were characterized as loans, are not conclusive. Apropos is Calder v. Graves, supra, where on a considerably stronger state of facts the court said,

> "It is true that he gave a demand note at the end of each year, paid back part of the principal and also paid interest, but these facts are not necessarily conclusive of the issue whether the amounts taken were *bona fide* loans. Who fixed the amounts, and determined the rate of interest? When were the alleged loans to be repaid, and how? Who was to enforce any demand as to their collection? The petitioner of course, and unless he acted of his own volition there is no certainty whatever that any action would ever be taken, or that the alleged loans would ever be repaid." 261 App. Div. 95, 24 N.Y.S.2d 797, 801.

Furthermore in a closely held family corporation dividends may be distributed with considerable informality and not be denominated as such in the corporate documents. See Groh's Sons v. Groh, 1st Dept., 1903, 80 App.Div. 85, 91, 80 N.Y.S. 438, 443, reversed on other grounds, 1903, 177 N.Y. 8, 68 N.E. 992.

■ Upon the trial two letters were offered in evidence but excluded (Exs. "H" and "I" for identification). One, written November 21, 1928 by the company's accountant, H. Schreier, was in connection with the re-organization of the company and referred to the withdrawals as "overdrafts"; the other, a reply, by Jerome Regensburg. Although still uncertain as to the admissibility of this evidence the ruling made upon trial has been reversed and these letters accepted in evidence. Particularly since this is a non-jury case the federal rules should be liberally applied when doubts arise as to the admissibility of evidence. These letters have not, however, altered the findings and conclusions reached above.

■ It having been found that the withdrawals were not loans there could be no valid pledge. Kommel v. HerbGner Construction Co., 1931, 256 N.Y. 333, 176 N.E. 413; see Restatement, Security § 1, comment g (1941). Hence neither could there be a valid lien nor a foreclosure, and the tax lien of the Government being first in time prevails. Cf. U. S. v. City of New Britain, Connecticut, 1954, 347 U.S. 81, 74 S.Ct. 367.

Judgment is granted the plaintiff for relief prayed for in the complaint. Let proposed judgment be submitted upon notice.