Fuld, J.
The question presented is whether a distribution in cash by a corporation to its shareholders from unrealized appreciation in the value of its assets is taxable income to a receiving shareholder under article 16 of the Xew York Tax Law, to the *326 extent that it does not exceed the cost or basis of his stock in the distributing corporation.
The facts are undisputed. In 1942 Larchmont Apartments, Inc., purchased an apartment house for approximately $1,745,000 from the Federal Housing Administrator to whom it gave a mortgage for $1,682,000. In 1950, by reason of the appreciation in the value of the real estate, the corporation obtained a new mortgage of $2,000,000 from an insurance company and paid off the existing one. As a result of this transaction, the corporation was left with net proceeds of $824,810.60. On July 27, 1950, it made a distribution to stockholders of $735,000, which was equal to $700 a share, and of this amount Leonard Marx, a stockholder and resident of New York, received $389,588.89. At the close of its fiscal year, January 31, 1951, the company’s accumulated earnings were $77,911.31 (before considering the distribution of $700 a share) which equalled approximately 10.6% of the distribution.[1]
In his 1950 Federal and New York personal income tax returns, Marx included $41,296.42, representing 10.6% of the total distribution to him, in gross income as a dividend, subject to tax as ordinary income. He reported the balance of the distribution, $348,292.47, in the capital gains schedule of his return, treating $346,117.85 thereof '(the amount eqivalent to the cost of his stock) as a return of capital to be applied against the basis of his stock, and reporting the excess of $2,174.62 as capital gain.
The Federal Internal Revenue Service approved Marx’s treatment of the distribution. However, the New York State Income Tax Bureau did not; it treated the entire distribution as ordinary income and assessed additional taxes against Marx. The State Tax Commission agreed with the bureau’s decision, concluding that the entire distribution was includible in gross income and subject to normal tax. The taxpayer thereupon commenced this article 78 proceeding and, following the Appellate Division’s nonunanimous confirmation of the determination, appealed to this court as of right.
*327 Since the appellant acknowledges that $41,296.42 is taxable as a dividend — as it represents his prorata share of the corporation’s accumulated “earnings or profits” — and since he concedes, for the purpose of this appeal, that $2,174.62 — the portion of the distribution exceeding the cost of his stock — is taxable as ordinary income rather than capital gain, we need concern ourselves only with the taxability of the remaining $346,117.85. It is the State Tax Commission’s contention that this amount is includible in gross income either (1) because it is a “ dividend ” under subdivision 8 of section 350 of the Tax Law or (2) because, even if not considered a “ dividend,” it is, in any event, “ gross income ” within the broad definition of that term in subdivision 1 of section 359.
Subdivision 1 of section 359 of the Tax Law which defines gross income expressly includes “ dividends ” within such definition and subdivision 8 of section 350 defines “ dividends ” as distributions made by a corporation to its shareholders out of “ earnings or profits Therefore, whether or not the distribution here in question was a dividend depends upon whether unrealized appreciation in value of a corporation’s assets, or the borrowing of money by the corporation, secured in part by such appreciation, increases its earnings and profits.
The phrase “ earnings or profits ” in an income tax statute is a term of art and must be construed in light of the basic concepts underlying such a statute, and one of the most fundamental concepts is that of realization. It is settled that, for income tax purposes, mere appreciation in the value of assets cannot result in a profit until that appreciation has been realized through a sale or other disposition. (Cf., e.g., People ex rel. Brewster v. Wendell, 196 App. Div. 613, 617.) Indeed, well before the passage of the New York Personal Income Tax Law in 1919, it was clear that for Federal income tax purposes' unrealized appreciation in the value of corporate property was not part of earnings and profits. (See, e.g., Lynch v. Turrish, 247 U. S. 221, 230, 231 [1918]; Lumber Mut. Fire Ins. Co. v. Malley, 256 F. 383, 384 [1916]; Baldwin Locomotive Works v. McCoach, 221 F. 59, 60 [1915]; see, also, Report of House Ways and Means Committee, H. R. Rep. No. 767, 65th Cong., 2d Sess., p. 4 [1918].) In 1918, for instance, the House Ways *328 and Means Committee declared that, under Federal decisions (Report, p. 4),
"an addition to surplus through reappraisement of assets is not made out of earnings or profits, and therefore a distribution of the amount so added to surplus would not be a taxable dividend, since not made out of earnings or profits.”
That the Legislature of this State deliberately and intentionally adopted this fundamental concept is established by the fact that, when it enacted the New York Personal Income Tax Law in 1919 (L. 1919, ch. 627), it modeled it after the Federal Revenue Act of 1918. (See, e.g., Minutes of Special Joint Comm. on Taxation and Retrenchment, Conference with Experts, Feb. 20-March 15,1919, pp. 413-417, 511, 512; Report of Special Joint Comm. on Taxation and Retrenchment, N. Y. Legis. Doc. No. 57 [1921], pp. 24-27; Report of Special Joint Comm. on Taxation and Retrenchment, N. Y. Legis. Doc., No. 72 [1922], p. 72; Tanzer, State Income Taxation, with Special Reference to the N. Y. Income Tax Law, Proceedings of the Twelfth National Conference of the National Tax Association [1919], pp. 386-387, 390.) For instance, the Joint Committee responsible for the income tax laws of this State declared (1921 Report of Special Joint Comm., op. cit., pp. 24, 27):
‘ ‘ It was thought desirable * * * to harmonize our taxes so far as possible with the Federal system * * *. This consideration was paramount in determining the form of the bill.
• * •
“ In defining and measuring the income on which the tax was to be laid, care was taken * * * [that] the Federal Law should be followed whenever possible.
‘ ‘ The bill accordingly followed for the most part the provisions of the Federal Law, defining gross incomes ”.
Moreover, one of those who actually had a hand in drafting the laws explicitly noted that the State statute — subdivision 8 of section 350—■“ defines the term * dividend ’ in the same terms *329 as the Federal Law. * * * It is the same definition as the Federal Law”. (Minutes of Special Joint Comm., op. cit., pp. 413, 417.) And, indeed, the State statute, just like the Federal act, included dividends within the definition of gross income and limited the definition of dividends to distributions “ from earnings or profits ”. It necessarily follows, therefore, that it was the legislative design to adopt the same meaning of the term “ earnings or profits ” as was intended under the Federal law and to exclude from “ dividends ” distributions from unrealized appreciation in the value of corporate assets.
The term “ earnings and profits ” is used elsewhere in a related provision of article 16 — subdivision (9) of section 354 [2] — in a way which cannot possibly include unrealized appreciation in value (see N. Y. State Dept. of Taxation & Finance, Personal Income Tax Regulations, art. 493-i; see, also, S. Rep. No. 627, 78th Cong., 1st Sess., p. 22 [1943]). And a familiar rule of construction recommends that the same meaning be given the words in both parts of the statute. (See, e.g., Mangam v. City of Brooklyn, 98 N. Y. 585, 592; People v. Gates, 56 N. Y. 387, 393; see, also McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 236.)
In point of fact, the exclusion of unrealized appreciation from earnings and profits is so well established that in an action in the Federal courts relating to the taxability of a corporate distribution, similar to the one before us, the Commissioner of Internal Revenue actually conceded that unrealized appreciation did not increase earnings and profits. (See Commissioner of *330 Internal Revenue v. Gross, 236 F. 2d 612, 617-618.) In commenting on this concession, the Federal Court of Appeals for the Second Circuit wrote (p. 618):
“ But even if the Commissioner had made these arguments there is no reason to believe that he would have prevailed. It seems well settled that unrealized appreciation does not increase ‘ earnings and profits ’. [Authorities cited.] ”
Nor does borrowing on the security of the appreciation in the value of corporate assets increase the corporation’s earnings and profits, for it effects no realization of gain or income and no increase in net worth. True, money is received by the corporation, but it retains the ownership of the appreciated assets and incurs an equivalent liability. (See Commissioner of Internal Revenue v. Gross, 236 F. 2d 612, supra; see, also, Woodsam Associates v. Commissioner of Internal Revenue, 198 F. 2d 357.)
"VVe regard the Tax Commission’s reliance on Randall v. Bailey (288 N. Y. 280) and People ex rel. Wedgewood Realty Co. v. Lynch (262 N. Y. 202, motion to amend remittitur denied 262 N. Y. 644) as misplaced. Nothing decided or said in either of those eases easts doubt on the proposition that unrealized appreciation does not increase earnings or profits. In Randall v. Bailey (288 N. Y. 280, supra), the court merely held that the declaration of a dividend from surplus resulting from a realistic revaluation of assets did not violate the prohibition contained in section 58 of the Stock Corporation Law against payment of a dividend which would impair capital. And in the Wedgewood Realty Co. ease (262 N. Y. 202, supra), the court held no more than that a distribution made out of unrealized appreciation of assets was a dividend for purposes of computing or measuring the franchise tax to be imposed upon a distributing corporation. However, as is apparent, the statutes involved and construed in the Randall and Wedgewood cases did not limit the definition of dividends to distributions from earnings or profits ” as the Tax Law does, and this thoroughly distinguishes those decisions; in neither of those cases was the court called upon to consider whether corporate distributions from unrealized *331 appreciation of assets are distributions from “ earnings or profits ”.[3]
The exclusion of unrealized appreciation from 11 earnings or profits ” as a source of taxable dividends is soundly and wisely based, for to make the determination of the corporation’s “ earnings or profits ” at the time of each corporate distribution depend upon a revaluation of all the corporate assets would create serious administrative difficulties. There is probably no problem in the administration of the tax laws which is fraught with more uncertainty, is more time-consuming and expensive, or leads to less satisfactory results than the problem of the valuation of property. Nothing short of a clear legislative mandate would persuade us to decide that it is necessary to have a current valuation of all corporate assets, wherever located, for the purpose of determining the taxability of corporate distributions.
In short, the term “ earnings or profits ” used in defining “dividends” in the New York Personal Income Tax Law was drawn from the Federal Income Tax Law, and no good reason has been advanced for adopting a different meaning of that term for New York State income tax purposes than has been adopted and consistently applied from the beginning in the construction of the Federal statute. And we but observe that the decisions of the courts of other States are to the same effect. (See, e.g., Sears v. Commissioner of Corporations & Taxation, 322 Mass. 446, 451; State ex rel. Hansen v. Cary, 191 Wis. 153, 156.)
The commission’s second argument is that, even if the distribution is not a dividend within the meaning of that term as used in the definition of “ gross income” in subdivision 1 of section 359, it must, nevertheless, be treated as “ gross income ” under other and broader provisions contained in that definition, such as, for example, the sweeping phrase “ income derived from any source whatever ”.
*332 A consideration of the legislative history of the New York and Federal Personal Income Tax statutes clearly demonstrates that distributions other than from earnings and profits were considered as a return of capital to the extent that they did not exceed the basis of the receiving shareholder’s stock. As previously indicated, the New York Personal Income Tax Law was modeled on the Federal law and the definition of gross income paralleled that in the Federal act. Prior to the enactment of the New York law, article 1549 of regulation 45 of the Federal Regulations provided:
“In general, any distribution made by a corporation other than out of earnings or profits * * * is to be regarded as a return to the shareholder of part of the capital represented by his shares of stock ”.
At the time of the enactment of the New York Tax Law, the term “gross income” as used in the Federal statute did not encompass corporate distributions from sources other than earnings and profits except to the extent that such a distribution exceeded the basis of the receiving shareholder’s stock. The inclusion of virtually identical definitions of “ gross income ” and “ dividends ” in the State law manifests a legislative intent to adopt this concept and the administrators of the Tax Law took this same position in article 66 of the Personal Income Tax Regulations. This regulation was adopted in 1920 and was patterned almost verbatim on article 1549 of regulation 45, quoted above, and it has continued in substantially the same form up to the present. The principle embodied in this regulation for almost 40 years, and in the Federal regulations on which it was fashioned, must be deemed to have received legislative sanction.
Actually, the precise contention here advanced by the State Tax Commission was rejected in Commissioner of Internal Revenue v. Gross (236 F. 2d 612, supra). In that case, as here, corporate distributions were made, based on unrealized appreciation in the value of improved real estate, and the sources of these distributions were in part moneys borrowed on the security of the real estate. The Commissioner of Internal Revenue argued, exactly as does the State Tax Commission, *333 that the payments fell within the broad compass of “ gross income.” The Court of Appeals for the Second Circuit, called upon to construe provisions which served as the models for the ones before us, flatly repudiated the Government’s position, stating (p. 617):
“ we are unable to accept the Commission’s argument that a corporate distribution not out of earnings and profits may be * * ordinary income. It may well be that the earnings and profits requirement is subject to criticism and that a more satisfactory method of taxing corporate distributions could be devised. * * * But we must work within the framework * * * provided. ’ ’
And, shortly after this decision was handed down, the Commissioner of Internal Revenue recognized the soundness of the court’s ruling by announcing his acquiescence therein (see 1957-2 Cum. Bull. p. 5; Rev. Rul. 57-357, 1957-2 Cum. Bull, p. 900). Thus, it is clear that under Federal law the sum of $348,292.47 paid to Marx did not represent income and, in fact, as already noted, the Internal Revenue Service actually so ruled in approving the taxpayer’s return.
It has long been the policy of our courts to adopt, whenever reasonable and practical, the Federal construction of substantially similar tax provisions. (See, e.g., Matter of Rogers, 296 N. Y. 676, affg. 269 App. Div. 551, 555 et seq.; Matter of Russell, 294 N. Y. 99,103; Matter of Weiden, 263 N. Y. 107, 110; Matter of Bank of Richmondville v. Graves, 259 App. Div. 4, 10, affd. 284 N. Y. 671; People ex rel. Mosbacher v. Graves, 254 App. Div. 438, 439, affd. 279 N. Y. 793; People ex rel. Klauber v. Wendell, 196 App. Div. 827, 829-830, affd. 232 N. Y. 549.) The doctrine is in furtherance of the legislative policy of maintaining uniformity in the administration of the two tax laws. As this court observed in Matter of Cregan (275 N. Y. 337, 341), we give great weight to the Federal decisions ‘ ‘ ‘ for the purpose of maintaining uniformity of administration of the Tax Law which the Legislature has sought to achieve.’ ” The reasons for applying the doctrine are particularly strong and persuasive, where, as here, the State act and regulations were *334 modeled upon the Federal law and regulations and both statutes and regulations closely resemble each other. In light of this policy, and the long-continued administrative practice evidenced by article 66 of the Tax Commission’s regulations, there can be no doubt that we should follow the Federal rule announced in the Gross case (236 F. 2d 612, supra) and hold, contrary to the position taken by the commission, that the distribution, insofar as it did not exceed the taxpayer’s cost or basis, is not includible in gross income.
The Appellate Division seemed to recognize that realization is a fundamental concept underlying the Income Tax Law, but it asserted that, although there was no realization of income by the corporation in this case, there was such realization by the taxpayer. This conclusion was apparently based on the theory that, by means of the distribution, the corporation accelerated the payment to its stockholders of anticipated future earnings. However, as was pointed out by the court in the Gross case (236 F. 2d 612, supra), to say that the distribution is in payment of anticipated future earnings and, by reason thereof, is income, only confuses the basic issue as to whether unrealized appreciation can be the source of a corporate distribution taxable as income.[4] Since it would be unsound to hold that unrealized appreciation or depreciation in value is to be taken into account in determining earnings or profits, it would also be unsound to hold that a corporate distribution is taxable because it is a distribution of anticipated future earnings based upon unrealized appreciation. “Paper profits” being what they are, there is no assurance, and there can be none, that the corporation will have future earnings or profits. But it is even more important to observe that, if the anticipated profit is eventually realized on the sale of the property, the realized gain would then become a part of the corporation’s earnings and profits, and a subsequent corporate distribution from those earnings *335 and profits would be taxable to the shareholders. The court expressed the thought in this way in the Gross case (p. 617):
“ if we tax the distribution of unrealized appreciation and also use the realization of the appreciation to increase earnings and profits at a later date, we tax the same earnings twice as ordinary income to the stockholders.”
The Appellate Division believed that the distribution here under consideration ought to be treated as an exception to the rule that a corporate distribution not out of “ earnings or profits ” is a return of capital, because no ‘ ‘ corporate purpose ’ ’ was served in “ getting together cash and distributing it to stockholders through a form of realization of the increment of value of corporate assets without selling them.” As we have already observed, the corporate borrowing on the security of the appreciated property was not, in our view, a realization of the appreciation. And we find no warrant in the statute for making the income tax treatment of a corporate distribution depend upon whether the funds distributed were acquired by the corporation with a corporate purpose other than the making of the distribution. The distribution was a valid one, and we are aware of no public policy which would require it to be treated differently from any other corporate distribution which is not out of earnings or profits of the distributing corporation.
The pattern of taxing corporate distributions is clear. To the extent that they are made out of £< earnings or profits,” they are £< dividends” and are thereby included in ££ gross income.” To the extent that they are not made out of ££ earnings or profits,” they are treated as a recovery of the cost or other basis of the shareholder’s stock; and only the excess over such basis is taxable. No other result would be compatible with the clear legislative design, the Federal decisions, the regulations under which the New York Tax Law has been administered since 1920, as well as reason and policy. We conclude, therefore, that the amount in issue, $346,117.85, is not includible in gross income, that rather it is to be treated, under the commission’s rules (Personal Income Tax Regulations, art. 66; see, also, People ex rel. Conway Co. v. Lynch, 258 N. Y. *336 245, 253), as a “return to the stockholder of part of [his] capital ” and applied against the basis of the appellant’s stock. Consequently, the appellant is required to pay a tax only on the excess over such basis, here $2,174.62.[5]
The order of the Appellate Division should be reversed and the determination of the State Tax Commission annulled, with costs in this court and in the Appellate Division, and the matter remitted to the State Tax Commission for further proceedings in accordance with this opinion.
Chief Judge Conway and Judges Desmond, Dye, Froessel, Van Voorhis and Burke concur.
Order reversed, etc.

. The refinancing had, of course, no effect on the corporation’s surplus account or capital account, since the increase in cash was offset by an equally large rise in liabilities (“Mortgage payable”).

. Subdivision (9) of section 354 provides that under certain specified conditions a shareholder, who receives appreciated property from a corporation in complete liquidation, may elect — instead of paying an immediate capital gains tax based on the amount of the appreciation—to delay the recognition of his gain by paying ordinary income taxes on “so much of the gain as is not in excess of his rateable share of the earnings and profits of the corporation”. Quite obviously, if the corporate earnings and profits were to include unrealized appreciation in the value of the corporate assets, the shareholder’s “ rateable,” or prorata, part of corporate earnings and profits would likewise include appreciation in value and the section would be meaningless since it would permit the shareholder no delay in recognizing his gain on the appreciated property. Earnings and profits, therefore, do not include unrealized appreciation for the purposes of subdivision (9) of section 354.

. Tt may not be amiss to note that a distribution which is a dividend for purposes of the law of corporations is not necessarily a dividend for purposes of the income tax law and that, conversely, what is not a dividend under corporate law may be a dividend under tax law. (See, e.g., Paul, Ascertainment of “ Earnings or Profits ” for the Purpose of Determining Taxability of Corporate Distributions, 51 Harv. L. Rev. 40, 51-52, and cases cited, n. 56.)

. In the Gross case, it was said (p. 616); “The Commissioner's argument that the distribution of these mortgage Windfalls is [1] an anticipation of future profits’ obscures the fact that the basic problem here is merely a somewhat novel manifestation of the much mooted question whether unrealized appreciation in value can be the source of a distribution taxable as ordinary income.”

. As noted above (supra, p. 327), we are not called upon to decide whether that excess over cost is ordinary income or capital gain, since the appellant, in view of the small tax liability involved, $68.50, conceded for the purpose of this appeal that such excess was to be treated as ordinary income.