C. WALTER RANDALL, as Trustee of BUSH TERMINAL COMPANY, Appellant, v. FRANK BAILEY et al., Respondents, Impleaded with Others.

Argued April 22, 1942; decided June 4, 1942.

*John M. Harlan, James E. Nickerson* and *Ray I. Hardin* for appellant. The payment of cash dividends on the basis of unrealized appreciation in fixed assets is indefensible. (*LaBelle Iron Works* v. *United States,* 256 U. S. 377; *Matter of Dowling,* 219 N. Y. 44.) The determination below is erroneous. (Cons. Laws, ch. 59, § 58; *Lowry* v. *Farmers' Loan & Trust Co.,* 172 N. Y. 137; *Roberts* v. *Roberts-Wicks Co.,* 184 N. Y. 257; *McGill Co.* v. *Underwood,* 161 App. Div. 30; *Hill* v. *International Products Co.,* 129 Misc. Rep. 25; 226 App. Div. 730; *Hutchinson* v. *Curtiss,* 45 Misc. Rep. 484; *Kingston* v. *Home Life Ins. Co.,* 11 Del. Ch. 258; *Southern California Home Builders* v. *Young,* 45 Cal. App. 679; *Vogtman* v. *Merchants' Mortgage & Credit Co.,* 20 Del. Ch. 364.)

*Spencer Pinkham, Henry F. Holthusen* and *Charles E. Oberle* for Frank Bailey et al., respondents. Surplus or impairment under section 58 of the Stock Corporation Law (Cons. Laws, ch. 59) is determined by comparing the actual value of the assets of a corporation with the amount of its liabilities including capital stock. (*Edwards* v. *Douglas,* 269 U. S. 204; *Strong* v. *Brooklyn Cross-Town R. R. Co.,* 93 N. Y. 426; *Williams* v. *Western Union Tel. Co.,* 93 N. Y. 162; *Equitable L. A. Society* v. *U. P. R. R. Co.,* 212 N. Y. 360; *People ex rel. Astoria Light, Heat & Power Co.* v. *Cantor,* 236 N. Y. 417; *Small* v. *Sullivan,* 245 N. Y. 343; *People ex rel. Wedgewood Realty Co.* v. *Lynch,* 262 N. Y. 202; 262 N. Y. 644.) The appellant has failed to prove any loss within the meaning of section 58 of the Stock Corporation Law. (*Greene* v. *Boardman,* 143 Misc. Rep. 201; *Stratton* v. *Bentles,* 238 App. Div. 87.)

*David Paine* and *George Koegler* for Title Guarantee and Trust Company, as ancillary executor of Edward T. Bedford, deceased, respondent. The sole purpose of section 58 is to insure that a corporation always has assets sufficient in value to meet its debts and its capital liability to shareholders. (*Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Bourne* v. *Bourne,* 240 N. Y. 172; *Equitable*

*L. A. Society* v. *U. P. R. R. Co.*, 212 N. Y. 360; *Williams* v. *Western Union Tel. Co.*, 93 N. Y. 162; *Ithaca Trust Co.* v. *United States*, 279 U. S. 151; *Strong* v. *Brooklyn Cross-Town R. R. Co.*, 93 N. Y. 426; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *People ex rel. Astoria L., H. & P. Co.* v. *Cantor*, 236 N. Y. 417; *Small* v. *Sullivan*, 245 N. Y. 343; *People ex rel. Wedgewood Realty Co.* v, *Lynch*, 262 N. Y. 202; 263 N. Y. 669; *Edwards* v. *Douglas*, 269 U. S. 204.) Value is the test under section 58. (*McCannon* v. *Lusk-Mitchell Newspapers*, 292 N. W. Rep. 82; *People ex rel. Wedgewood Realty Co.* v. *Lynch*, 262 N. Y. 202; 262 N. Y. 644; 263 N. Y. 669; *People ex rel. Eastern Building Corp.* v. *Lynch*, 245 App. Div. 787; *Williams* v. *Western Union Tel. Co.*, 93 N. Y. 162; *Strong* v. *Brooklyn Cross-Town R. R. Co.*, 93 N. Y. 426; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *People ex rel. Astoria Light, Heat & Power Co.* v. *Cantor*, 236 N. Y. 417; *Small* v. *Sullivan*, 245 N. Y. 343; *Gallagher* v. *New York Dock Co.*, 263 App. Div. 878; *Hyams* v. *Old Dominion Copper Mining Co.*, 82 N. J. Eq. 507; 83 N. J. Eq. 705; *Siegman* v. *Electric Vehicle Co.*, 140 Fed. Rep. 117; *Cannon* v. *Wiscassett Mills Co.*, 195 N. C. 119.)

CONWAY, J. The plaintiff, as trustee, seeks in this action to recover from directors and executors of deceased directors dividends declared and paid between 1928 and 1932, alleging that they were paid from capital in violation of section 58 of the Stock Corporation Law (Cons. Laws, ch. 59).

The corporation involved is the Bush Terminal Company, hereinafter called Terminal, which was organized in 1902. It owns and operates a great ocean terminal. The land in Brooklyn which it and its wholly owned subsidiary, Bush Terminal Buildings Company, hereinafter called Buildings, purchased between 1902 and 1905, increased in value with the passing years. Until 1915 Terminal and Buildings carried that land at its original cost. In 1915 and again in 1919 they committed to their books a portion of the increase in value of that land. It has not since been increased. The trial court found that its value during the years 1928 to 1932 was greater than the value to which it had been increased upon the corporate books. Those findings have been unanimously affirmed. Even apart from that affirmance, which concludes us, there is no claim that the findings are not correct. Moreover, there is no

allegation in the complaint that any director acted fraudulently, in bad faith or negligently in valuing the land or in voting the dividends. The question presented, therefore, is solely one of law and involves the construction of section 58 of the Stock Corporation Law. We are concerned only with the legislative prohibition as evidenced in section 58 as enacted in 1923 (L. 1923, ch. 787). If the directors of Terminal were permitted to include among the corporate assets the value of the land at the amount at which it was valued on the books from 1919 onward there was a surplus for the payment of dividends and no recovery may be had in this action. If it must be carried at cost then the directors unjustifiably declared and paid the dividends which plaintiff seeks to recover. The question presented, therefore, is: may unrealized appreciation in value of fixed assets held for use in carrying on a corporate enterprise be taken into consideration by directors in determining whether a corporate surplus exists from which cash dividends may be paid to stockholders.

The original forerunner of section 58 was section 2 of chapter 325 of the Laws of 1825. It will be helpful in ascertaining the legislative intent if we examine that section and the sections which followed, either by way of amendment or substitution, down to the enactment of section 58 in 1923. The accompanying footnote contains the applicable changes from 1825 through the enactment of section 58 in 1923.*

The appellant contends that the first sentence of section 58 of the Stock Corporation Law should be divided into two parts;

---

* Chapter 325 of the Laws of 1825, § II:

"*And be it further enacted,* That it shall not be lawful for the directors or managers of any incorporated company in this state to make dividends, excepting from the surplus profits arising from the business of such corporation; and it shall not be lawful for the directors of any such company to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of said company, or to reduce the said capital stock, without the consent of the legislature; * * *."

Section II of title IV of chapter 18 of part 1 of the Revised Statutes of 1828, 1836 and 1851:

"It shall not be lawful for the directors or managers of any incorporated company in this state to make dividends, excepting from the surplus profits arising from the business of such corporation; and it shall not be lawful for the directors of any such company to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such company, or to reduce the said capital stock, without the consent of the legislature; * * *."

that the first twenty-six words should be applicable to the payment of what he terms regular or ordinary dividends and that the remaining portion of the sentence should be applicable to such dividend as may be declared in connection with a reduction of capital. That

Section 23 of the Stock Corporation Law (L. 1890, ch. 564):

" § 23. Liability of directors for dividends not made from surplus profits.

" *The capital stock of a stock corporation shall be deemed impaired when the value of its property and assets after deducting the amount of its debts and liabilities, shall be less than the amount of its paid up capital stock.* No dividends shall be declared or paid by any stock corporation, except from the surplus profits of its business, nor when its capital stock is or will be impaired thereby, and no such corporation shall divide or withdraw or in any way pay to its stockholders, or any of them, any part of its property and assets, so as to reduce the value thereof after deducting the amount of its debts below the amount of its capital stock, or reduce its capital too sexcept in the manner prescribed by law. \* \* \*."

Chapter 688 of the Laws of 1892. An act to amend the Stock Corporation Law:

" § 23. Liability of directors for making unauthorized dividends.

" The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation; nor divide; withdraw or in any way pay to the stockholders, or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law."

Chapter 354 of the Laws of 1901. An act to amend chapter 36 of the General Laws, known as the Stock Corporation Law:

" § 23. Liability of directors for making unauthorized dividends. The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law."

Section 28 of article III of chapter 59 of the Consolidated Laws (Stock Corporation Law, L. 1909, ch. 61):

" § 28. Liability of directors for making unauthorized dividends.

" The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law."

Chapter 787 of the Laws of 1923 (An Act to amend the Stock Corporation Law, generally), article VI, section 58:

" § 58. Dividends. *No stock corporation shall declare or pay any dividend which shall impair its capital or capital stock, nor while its capital or capital stock is impaired, nor shall any such corporation declare or pay any dividend* or make any distribution of assets to any of its stockholders, whether upon a reduction of the number of its shares or of its capital or capital stock, *unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be."*

construction makes the clause commencing " unless the value of its assets " modify only the second portion.

The appellant points out that in 1912 the Legislature authorized the issuance of stock without par value and provided in section 20 of the Stock Corporation Law, with reference to such a corporation, " No such corporation shall declare any dividend which shall reduce the amount of its capital below the amount stated in the certificate as the amount of capital with which the corporation will carry on business " (L. 1912, ch. 351, § 20); and that in 1921 that section was amended to read, " No such corporation shall declare or pay any dividend which shall reduce the amount of its stated capital " (L. 1921, ch. 694, § 20). Thus immediately prior to 1923, corporations having only par value stock were governed by the " surplus profits " language (Stock Corp. Law, § 28; see footnote on preceding page) while those having stock without par value were governed by the " amount of stated capital " language. Appellant then contends that the Legislature intended to eliminate the variation of terminology and the overlapping provisions contained in sections 20 and 28 and accomplished that elimination by the enactment of the first twenty- six words in the first sentence of the new section (§ 58) by simply providing that no business stock corporation should distribute dividends which should " impair its capital or capital stock," although the Legislature was in reality continuing the " surplus profits " test of former section 28; that the terminology " surplus profits " and " impairment of capital " were used to express the same test. He contends that the surplus from which cash dividends may be distributed must be based upon actual profits and realized gains, over and above the capital investment, after provision has been made in respect of all losses, which, however, must be treated as realized or accrued, although conceding that dividends may properly be paid from paid-in surplus.

We shall first consider appellant's division of the first sentence of section 58 into two parts. Assuming that there may be some justification for that construction as a matter of syntax and statutory history, it seems to us that an equally strong argument may be made to the contrary. The words *any dividend* are contained in both portions of the sentence. Any is an all-exclusive word. When repeated in the same sentence one would reasonably assume that

the two words bore the same meaning each time. Those two words tie together by repetition the first and second portions of the sentence or so it might well be urged. They must mean a dividend of any kind or character and both portions of the sentence must be read in that light. They must mean that no dividend may be declared or paid which shall impair capital or capital stock nor unless the value of the corporate assets " remaining after the payment of *such* dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be."

That reasonable men may differ upon the syntax of the sentence under discussion is made apparent by an allegation contained in each of the causes of action in the plaintiff's complaint. It reads as follows: " The declaration and payment of said dividends impaired the capital and capital stock of Terminal; and the value of the assets of Terminal remaining after said payment was less, by an amount in excess of such payment, than the aggregate amount of the debts and liabilities of Terminal including its capital or capital stock; and, both at the time such dividends were declared and at the time they were paid, the capital and capital stock of Terminal was impaired and the declaration and payment of said dividends further impaired said capital and capital stock * * *."

There is other evidence, well nigh conclusive, that the Legislature intended to drop the " surplus profits " test, apart from the internal evidence contained in section 58 itself. In 1924 two subdivisions of section 664 of the Penal Law were amended. Prior to that year the Penal Law provided that a director was guilty of a misdemeanor who concurred in any vote:

" 1. To make a dividend, except from the *surplus profits* arising from the business of the corporation, and in the cases and manner allowed by law * * *." In 1924 that subdivision was amended to read: " 1. To make a dividend, except from *surplus*, and in the cases and manner allowed by law * * *." (L. 1924, ch. 221.)

Subdivision 5 of the same section had read: " To apply any portion of the funds of such corporation, except *surplus profits*, directly or indirectly, to the purchase of shares of its own stock." That subdivision was amended in 1924 to read: " To apply any

portion of the funds of such corporation, except *surplus*, directly or indirectly, to the purchase of shares of its own stock." (L. 1924, ch. 221.)

Again, we are concerned with the legislative will as written in the statute. We should construe the statutory language as the average business man would read and understand it. He is the one who must bear the burden civilly and criminally. If the Legislature had intended to continue the "surplus profits" test it would have said so clearly and unmistakably rather than by using the words "impair its capital or capital stock." While it is true that punctuation is no part of a writing, it also may not be amiss to point out that there is no semi-colon separating the two portions of the sentence in question. We think that a fair reading of the sentence is that the valuation of assets test is applicable to both portions and that it applies to the declaration and payment of regular or ordinary dividends, so termed by appellant.

Finally, as some indication of how the Legislature viewed its own language in section 58, as enacted in 1923, it is interesting to note an amendment of section 58 in 1939 (L. 1939, ch. 364, §§ 1, 2). The amendment was not retroactive by express provision of the amending act (§ 2). It provided, however, in substance, that directors should have an affirmative defense if able to show that they had "reasonable grounds to believe, and did believe, that such *dividend or distribution* would not impair the capital of such corporation." Quite clearly, in 1939 the Legislature believed that in the enactment of 1923 it had used impairment of capital terminology and the "value of its assets" terminology interchangeably.

Let us now consider section 58 with the applicable sections which preceded it. We are concerned primarily with the meaning of the words "impair its capital or capital stock." In the statute of 1825 neither the word value nor the word impair was used. In the statute of 1890 there was a definition of impairment of capital stock. It read: "The capital stock of a stock corporation shall be deemed impaired when the value of its property and assets after deducting the amount of its debts and liabilities, shall be less than the amount of its paid up capital stock. No dividends shall be declared or paid by any stock corporation, except from the surplus profits of its business, nor when its capital stock is or will be impaired

thereby, * * *." That was a clear definition of impairment in terms of value. The " surplus profits " terminology was retained from the act of 1825. In 1892 the statute was amended. It retained the " surplus profits " provision but omitted the word " impair." Instead it returned to the " reduce its capital stock " terminology. Having omitted the word impair the Legislature naturally omitted the definition of impairment. The Legislature did not necessarily, as appellant contends, " reject " the definition of impairment as contained in the 1890 statute. There was no need for it since the word " impair " was not used. The Legislature continued its use of the " surplus profits " and " reduce its capital stock " terminology down to 1923.

When the Legislature in 1923 wrote into the first sentence the words " impair its capital or capital stock, nor while its capital or capital stock is impaired," and in the same sentence used words almost identical with those in the definition of impairment contained in the 1890 statute, it is more reasonable than not to assume that the Legislature was returning to its former definition of impairment of capital and at the same time abandoning the " surplus profits " test. The courts had consistently applied the value of assets rule in determining surplus, surplus profits or impairment of capital without distinction (*Strong* v. *Brooklyn Cross-Town R. R. Co.*, 93 N. Y. 426, 434; *Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162, 191; *Equitable Life Assur. Soc.* v. *Union Pacific R. R. Co.*, 212 N. Y. 360, 372; *People ex rel. Astoria Light, Heat & Power Co.* v. *Cantor*, 236 N. Y. 417, 424; *Small* v. *Sullivan*, 245 N. Y. 343), and the Legislature clarified the language of the statute so as to remove any doubt as to the fact that value was the test. In fact appellant concedes that the determination of the courts below is correct if in drafting the provisions of section 58 in 1923 the Legislature changed the then existing law as to illegal dividends and reinstated the definition of impairment of capital which it had omitted when enacting the statute of 1892. It seems to us that a fair reading of the statute in the light of its language and historical development clearly indicates that that is exactly what the Legislature intended to accomplish. To say that in the one sentence there were different tests of liability for directors of business corporations, one involving " surplus profits," *although those words were not there,*

and the other involving value of assets, regardless of surplus profits, would be to depart from the authorities, the plain words of the statute and its historical implications. It has always been the rule that where an act amends an existing statute " so as to read as follows," thereupon enacting a new and substituted provision, all of the former statute omitted from the act as amended is repealed. (*Moore* v. *Mausert*, 49 N. Y. 332; *People ex rel. Sears* v. *Board of Assessors*, 84 N. Y. 610.) In reality, therefore, appellant is basing his construction of the statute upon the continuance therein of a provision repealed by the act of 1923. (See L. 1923, ch. 787.)

In any event our holding in *People ex rel. Wedgewood Realty Co.* v. *Lynch* (262 N. Y. 202; 262 N. Y. 644 [1933]) is decisive upon the issue here presented. That was a certiorari proceeding to review a determination of the State Tax Commission upon the relator's application for a revision and resettlement of its assessment of an annual franchise tax under section 182 of the Tax Law (Cons. Laws, ch. 60). The statute read in part: " But if the dividends made or declared on the par value of any kind of capital stock during any year * * * amount to six or more than six per centum, the tax upon such kind of capital stock shall be at the rate of one quarter of a mill for each one per centum of dividends made or declared * * *." The Wedgewood Realty Co., Inc., the old company prior to the organization of relator, had accumulated a substantial surplus consisting largely of " unrealized appreciation " in the value of its land in excess of cost. The stockholders organized a corporation bearing the name H. F. K. Inc. The old Wedgewood Realty Co. transferred to H. F. K. Inc. all of its outstanding stock and thereupon became a subsidiary of H. F. K. Inc. In exchange for that stock, H. F. K. Inc. issued and delivered to the stockholders of the old Wedgewood Realty Co. 475 shares of its own capital stock without par value and $600,000 in amount of its own debenture bonds. Two days later H. F. K. Inc. merged with the old Wedgewood Realty Co. and, by the certificate of merger, assumed the latter's name. H. F. K. Inc., under the name so assumed, was the relator in the certiorari proceeding and was referred to in the opinion as the new Wedgewood Realty Co. The Tax Commission contended that the transaction was but a subterfuge and that the delivery of the $600,000 of bonds to the stock-

holders of the old company was in fact a dividend out of surplus and therefore taxable. This court so held saying (p. 207): " This was more than a mere splitting of the evidences of stock ownership. *The amount which might have been distributed to stockholders in annual dividends* was by this scheme of reorganization distributed all at one time."

It appeared, however, that the surplus, including the unrealized appreciation, was less than $600,000. Therefore, the opinion contained the following (p. 208): " The bond issue was not, however, in its entirety a distribution of earnings. So far as it represented a distribution of capital it was not a taxable dividend. The record on this point is not as complete as it should be. The amount of the surplus is not directly shown by the record. Unquestionably it was less than $600,000, the amount of the bond issue. The Tax Commission should restate the financial condition of the old Wedgewood Company at the time of the merger and restate the tax accordingly."

Thereupon the relator made a motion to amend the remittitur " by adding after the words ' in accordance with the opinion of POUND, Ch. J.,' the following: ' and that upon said further hearing the tax commission, in determining the amount of the earnings distributed, *omit from surplus any appreciation in excess of cost in the value of the real estate* of the old Wedgewood Company not realized by sale * * *.' "

In deciding that motion we said (262 N. Y. 644): " The point is that the opinion (262 N. Y. 202) does not clarify the meaning of ' earnings,' and that the tax commission insists *in including therein appreciation in excess of cost in the value of the real estate of the old Wedgewood Company not realized by sale prior to December 31, 1927. The opinion indicates that the reorganization resulted in a division of profits by the corporation. The appreciation in value of the real estate was included in profits.* Motion to amend remittitur denied * * *."

The Legislature having declared that dividends may be paid when there is no impairment of capital or capital stock caused thereby and when the value of the corporate assets remaining after the payment of such dividends is at least equal to the aggregate amount of its debts and liabilities including capital or capital

stock as the case may be (Stock Corp. Law, § 58), in other words from its surplus, our inquiry turns to the question whether surplus may consist of increases resulting from a revaluation of fixed assets. Surplus has been well defined as follows in *Edwards* v. *Douglas* ([BRANDEIS, J.] 269 U. S. 204, 214): "The word 'surplus' is a term commonly employed in corporate finance and accounting to designate an account on corporate books. * * * The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par. It may be 'earned surplus,' as where it was derived wholly from undistributed profits. Or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property. See *La Belle Iron Works* v. *United States* 256 U. S. 377, 385."

The decision below was correct and the judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur.

Judgment affirmed.