50 N.J. Super. 414 (1958)
142 A.2d 684
IN THE MATTER OF THE ESTATE OF HENRY S. TERHUNE, DECEASED.
LONG BRANCH TRUST COMPANY, PLAINTIFF-RESPONDENT,
v.
CHARLES C. SCHOCK, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1958.
Decided June 6, 1958.
*416 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Edward C. Stokes argued the cause for appellant.
Mr. Laurence C. Stamelman argued the cause for respondent.
The opinion of the court was delivered by HANEMAN, J.A.D.
This is an appeal from a final judgment of the County Court, fixing the amount of the charge to be imposed upon a remainderman in favor of a life tenant *417 for stock received by way of a dividend on stock held as part of the corpus of a trust.
The matter is submitted upon an agreed statement in lieu of record.
The facts so disclosed are:
Henry S. Terhune died on January 12, 1942, leaving a last will and testament under the terms of which there was created a trust of which the Long Branch Trust Company is substituted trustee. Under the terms of the trust the income from the residue which formed the corpus was to be paid to certain named cestuis during the lifetimes therein specified. Upon the death of the life tenants the corpus was directed to be paid to named remaindermen. Further details of the trust and the identity of these persons are not necessary to a decision of the issues raised on this appeal.
Among the assets of the trust were 824 shares of the capital stock of Socony Mobil Oil Company, Inc., a corporation of the State of New York (hereafter referred to as Socony).
On April 27, 1956 Socony declared a stock dividend at the rate of one share of capital stock of the par value of $15 per share for each four shares of stock outstanding.
The corporate resolution authorizing the dividend reads, in part:
"Further Resolved, that the proper officers of this Company be and hereby are authorized to record in the Company's records the payment of such stock dividend, (1) by charging Capital Surplus Account $88,960,965 and by crediting Capital Stock Account with the same amount; (2) by charging Earned Surplus Account $443,902,500 or $50 per share for each of the 8,878,050 shares to be issued, the $50 per share having been determined as an approximation of the average market value of the Company's shares over a short period prior to January 16, 1956; (3) by crediting Capital Stock Account $44,209,785; (4) by crediting Capital Surplus Account $399,692,715."
The net result of the above was the transfer from the Earned Surplus and Capital Surplus accounts to the Capital Stock account of $133,170.750. This sum represented the total par value, i.e., $15 per share, of the stock to be issued. *418 In addition, the Capital Surplus account was increased by $310,731,750, which sum represents the difference between the par value and approximate market value of the new shares, i.e., $35 per share. Thus, upon issuance of the new shares of stock Socony transferred to the Capital Stock account $15 for each new share and to the Capital Surplus account $35 for each new share, or a total of $50 per share.
Of the amount so transferred to the Capital Stock account, however, $88,960,965 represented the unused balance of a sum which was charged to the Capital Stock account and credited to the Capital Surplus account in 1934. That sum originated in the Capital Stock account as one result of a reduction in the then par value of the stock. Thus, the amount transferred from the Capital Surplus account is the equivalent of approximately $10.02 per share of the newly issued stock. It has been stipulated by counsel that this sum properly belongs to the remaindermen and that they should not be charged therefor. In the light thereof, it is unnecessary for this court to consider that sum in its deliberations. We express no opinion, however, on the propriety of that conclusion.
Socony suggests that the above transfers were made in compliance with the policy of the New York Stock Exchange, which requires listed companies who declare stock dividends to transfer from earned surplus to the permanent capital of the company an amount equal to the fair value of the shares to be distributed. The $50 was an approximation of the market value of Socony's shares of stock over a short period prior to January 16, 1956, when the intention to declare a dividend was announced, after an adjustment to give effect to such dividend. Socony advised that it could not thereafter pay a cash dividend from the amount transferred to the Capital Surplus account without violating its listing agreement with the New York Stock Exchange and section 58 of the New York Stock Corporation Act.
The trial court charged the remaindermen at the rate of $50 for each share of common stock received by the trustee as a dividend.
*419 The remaindermen suggest a number of alternative charges less than $50 per share.
It is admitted that the funds transferred as above set forth, except for the $88,960,965, were earned subsequent to the creation of the trust.
It should be noted that the provisions of N.J.S. 3A:14A-4 are inapplicable, since the trust was created prior to 1952. The solution must, therefore, be found in the pre-statutory law under which shares of stock received by a trust estate by way of a dividend become part of the corpus and vest in the remaindermen, subject to a charge against them in favor of the life tenant. Such a charge is designed to represent the share of the life tenant's money which, in effect, went into the purchase of the shares. In re Wehrhane's Estate, 41 N.J. Super. 158 (Ch. Div. 1956), and cases cited therein, affirmed on an issue not here involved, 23 N.J. 205 (1957).
It becomes necessary to determine whether the transfers to the several accounts placed those funds in such a position as to be unavailable for future dividends. Paraphrased, it is necessary to determine whether any funds which could benefit the life tenants in the future have been irrevocably transferred to an account, the proceeds of which will redound solely to the benefit of the remainderman. The basic inquiry is, therefore, whether future dividends may be declared out of capital surplus by a corporation of the State of New York.
Section 58 of the New York Stock Corporation Law, McKinney's Consol. Laws, c. 59, reads:
"No stock corporation shall declare or pay any dividend which shall impair its capital, nor while its capital is impaired, nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number of par value of its shares or of its capital, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities, including capital. In case any such dividend shall be paid, or any such distribution of assets made, the directors in whose administration the same shall have been declared or made, except *420 those (1) who may have caused their dissent therefrom to be entered upon the minutes of the meetings of directors at the time or (2) who having been absent when such action was taken may have communicated in writing their dissent to the secretary or caused their dissent to be entered on the minutes within a reasonable time after learning of such action, or (3) who affirmatively show that they had reasonable grounds to believe and did believe, that such dividend or distribution would not impair the capital of such corporation, shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution." As amended L. 1938, c. 685, sec. 5; L. 1939, c. 364, sec. 1, effective April 29, 1939.
Indubitably, under the cited statute a New York corporation cannot declare a cash dividend which would impair the capital of said corporation. In Randall v. Bailey, 288 N.Y. 280, 43 N.E.2d 43, 46 (Ct. App. 1942), the court said:
"They must mean that no dividend may be declared or paid which shall impair capital or capital stock nor unless the value of the corporate assets `remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be.'"
However, a New York corporation may declare a dividend out of earned surplus or capital surplus, including any profit made on the sale of its stock above the par value thereof. In Randall v. Bailey, supra, the court said (at 43 N.E.2d 48):
"The Legislature having declared that dividends may be paid when there is no impairment of capital or capital stock caused thereby and when the value of the corporate assets remaining after the payment of such dividends is at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be, Stock Corporation Law, § 58, in other words from its surplus, our inquiry turns to the question whether surplus may consist of increases resulting from a revaluation of fixed assets. Surplus has been well defined as follows in Edwards v. Douglas, 269 U.S. 204, 214, 46 S.Ct. 85, 88, 70 L.Ed. 235, Brandeis, J.: `The word "surplus" is a term commonly employed in corporate finance and accounting to designate an account on corporate books. * * * The surplus account represents the net assets of a corporation *421 in excess of all liabilities including its capital stock. This surplus may be "paid-in surplus," as where the stock is issued at a price above par; it may be "earned surplus," as where it was derived wholly from undistributed profits; or it may, among other things, represent the increases in valuation of land or other assets made upon a revaluation of the company's fixed property. See La Belle Iron Works v. United States, 256 U.S. 377, 385, 41 S.Ct. 528, 65 L.Ed. 998.'" (Emphasis supplied.)
The life tenants cite In re Wehrhane's Estate, supra, as authority for the charge of $50. The court in that case collated and so ably analyzed the law ante 1952 that a further treatment of the general subject would be redundant. There can be no doubt that the result there attained was proper. It was held that the remaindermen should be charged, not for the par value of the dividend stock, but rather for the actual amount transferred to capital stock account and thereby irrevocably appropriated to capital by the corporation. The court said (41 N.J. Super. at page 168) concerning a stock dividend of American Gas & Electric Company, a corporation of New York:
"As for the 1951 stock dividend, it is shown, indubitably it appears, by the proofs as well as by the pretrial order that it was supported by a transfer to capital stock from surplus earnings of funds equivalent to $50 per share of the stock dividend. As for the 1952 stock dividend, it is shown in like manner that a similar transfer to capital was made equal to $27.50 per share of the stock dividend."
The conclusion of that court, in the light of the transfer from surplus earnings to capital stock, was amply justified by Randall v. Bailey, supra.
In the matter now under consideration there is a completely different and distinguishable factual situation.
Socony, in effect, made a profit of $35 per share upon its declaration of the stock dividend. The amount received per share was to that extent in excess of its par value. When it transferred the $50 above set forth, it used earnings which were available for future cash dividends, i.e., the possible property of the life tenants, to pay for the stock to be issued. Socony studiously avoided transferring *422 the full $50 to its capital stock account. Such action would have made the full sum inviolate, i.e., the sum transferred could not thereafter be distributed as a cash dividend. The net result of the transfers to and from the capital surplus account was a credit to that account of a sum equal to $35 per share of stock to be issued. This sum is available for distribution as cash, in the future.
The New York Stock Exchange Listing agreement does not alter the situation. The position assumed by Socony of the effect of that agreement is at most an avowal of its intention to comply therewith. It is not argued nor can it be seen how it could successfully be contended that this agreement overrode or abrogated the specific statute. In spite of any such agreement Socony may, at some future date, under the law declare a cash dividend from the capital surplus account.
Out of the sums transferred in connection with the stock dividend, $15 per share was placed in a category from which no future dividends could be declared. However, the life tenants make no claim to $10.02 of this amount, as above noted.
The judgment below is reversed and the remaindermen charged to the extent of $4.98 per share for the benefit of the life tenants.
Costs are allowed to both plaintiff and defendant, payable out of the corpus of the estate, which allowance shall include a counsel fee for each of their respective counsel in the sum of $1,250.