72 N.J. Super. 310 (1962)
178 A.2d 119
IN THE MATTER OF THE TRUST UNDER THE WILL OF OTTO ARENS FOR THE BENEFIT OF EDITH ARENS HAGEDORN.
Superior Court of New Jersey, Union County Court, Probate Division.
Decided January 19, 1962.
*311 Mr. Horace E. Bunker for the trustee (Messrs. Bunker, Elliot & Mooney, attorneys).
Mr. Woodruff J. English for the life beneficiary (Messrs. McCarter & English, attorneys).
Mr. Carlyle W. Crane for John Edward Arens, Otto Siegfried Arens and John H. Arens remaindermen.
Mr. Alfred C. Clapp for the remaining remaindermen and the guardians thereof (Messrs. Clapp & Eisenberg and Messrs. Hetfield & Hetfield, attorneys).
BARGER, J.C.C.
The plaintiff, Plainfield Trust State National Bank, formerly the Plainfield Trust Company of Plainfield, New Jersey, is the surviving substituted trustee of the trust for the benefit of Edith Arens Hagedorn, formerly Edith Mary Arens, under article "Third," subdivision "3d," of the last will and testament of Otto Arens, which was admitted to probate in the Union County Surrogate's Office on September 7, 1910, and as such trustee *312 files its fourth intermediate account covering the period from December 17, 1946 to September 29, 1959. The account has been generally approved by the court, reserving those questions raised by the instructions sought by the trustee as hereinafter mentioned.
Otto Arens, a resident of the City of Plainfield, died August 26, 1910, leaving a last will and testament dated May 5, 1891, and which was admitted to probate on the date indicated. Under the article of the will referred to, after the termination of the initial life estate established for his wife, who died on November 25, 1920, the testator created a trust for his daughter, Edith Arens Hagedorn, entitling her to the income from one-half of the corpus of the trust fund mentioned for life, one-half on the death of his widow being distributed to a son. Upon the death of the last life beneficiary mentioned, the testator provided that the one-half of the corpus of the trust fund comprising this life estate should go to his daughter's issue, if any, and if there should be no issue then the testator gave the corpus mentioned to his son, Siegfried H. Arens, if living, and if not, to the son's issue. Mrs. Hagedorn is now 80 years of age and has no issue, and the son is deceased, but the son is survived by several issue, who will take the principal of the estate, per capita, upon her death. There are now eight remaindermen living, some not having attained their majority.
This trust has been administered by successive trustees and the plaintiff is the sole surviving substituted trustee. During the period covered by this account, i.e., from December 17, 1946 to September 29, 1959, there have been distributions in the form of stock splits and dividends by the corporations whose shares of capital stock are held as investments by the trustee, and the trustee now seeks from this court advice and instructions relating to the following:
1. Advice and instructions relating to the apportionment and allocation of the shares of stock received as stock splits and stock dividends during the period mentioned, as between *313 the life tenant and the remaindermen, i.e., as to income and corpus.
2. Advice and instructions from the court in respect to the charges to be made against the life tenant or the remaindermen, or both, as to income taxes to be paid upon capital gains to be realized in the sale of any shares in order to provide funds to accomplish any apportionment ordered.
By N.J.S. 3A:14A-1-9 the Legislature of this State enacted legislation controlling the apportionment of the property of the nature herein involved, and simplified the problem herein discussed. This statute, expressly by its language, is applicable only to trusts established under the wills of testators dying after its enactment. This statute is similar to that adopted in Pennsylvania and to the uniform statute, and is referred to under the court's comments on the Pennsylvania rule. The adoption of these statutes reflects the trend to abandon the Pennsylvania rule in favor of the Massachusetts rule. In re Fera's Estate, 26 N.J. 131 (1958). As to trusts vesting before the adoption date of the statute in 1952, the apportionment rule herein referred to applies. This is so in spite of the fact that in Fera the court determined that the apportionment rule is not one of property but rather one of construction of a rule. Further, the will creating the trust contains no instructions relating to the subject matter.
This estate has been the subject matter of prior adjudicated cases. See Plainfield Trust Co. v. Hagedorn, 28 N.J. 483 (1958); Hagedorn v. Arens, 106 N.J. Eq. 377 (Ch. 1930). Reference is made thereto for the antecedent factual background of this estate. We are concerned here with ten different stock investments involving stock splits or stock dividends and having the factual background set forth in Schedule C of the complaint and Exhibits P-3  23, inclusive.
In this country various rules are followed in apportioning splits and dividends. A comprehensive consideration of the *314 subject matter is with clarity discussed in Scott, Abridgement of the Law of Trusts, 1960, § 236-236.14, pp. 474-485.

THE PENNSYLVANIA RULE.
The rule until recently prevailing in Pennsylvania is sometimes referred to as a rule of apportionment, or source rule. It was abrogated in Pennsylvania insofar as trusts vesting since 1945 are concerned by the adoption in that state of the "Uniform Principal and Income Act," adopted May 3, 1945, P.L. 416 et seq. This statute was originally promulgated in 1931 by the National Conference of Commissioners on Uniform State Laws and took the form as promulgated for the reasons hereinafter indicated. The act rejects the Pennsylvania rule and substitutes therefor what is commonly referred to as the Massachusetts rule, later commented upon. Also on July 3, 1947 there was enacted in Pennsylvania another similar statute, P.L. 1283, 20 P.S. §§ 3470.1, 3470.13 (1947).
In both statutes it was provided that they should apply to all trusts "theretofore or thereafter made or created." As a result of this language a constitutional question arose as to those trusts vesting prior to the date on which the statute was adopted, the contention being that the retroactive application deprived a person of property without due process. Under decisional law in Pennsylvania it had been established that there was a vested property right in the life tenant, and that a retroactive application of the statute was violative of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. However, in the recent Pennsylvania case cited infra, the court reversed the former holdings relating to the unconstitutionality of the retroactive provision and held that there was no vested right in property, but rather the life tenant merely had a vested right in a rule which the court could, without violating the due process clause of either constitution, change. In re Fera's Estate, supra, *315 basically agrees with this reasoning. The opinion in In re Catherwood's Trust, 173 A.2d 86 (Pa. Sup. Ct. 1961) (not officially reported), indicates that Pennsylvania was the only state which had adopted the Uniform Principal and Income Act holding the retroactive application unconstitutional. Also see In re Allis' Will, 6 Wis.2d 1, 94 N.W.2d 226, 69 A.L.R.2d 1128 (Sup. Ct. 1959). It is noted at this point that this question has not arisen in this state because of the specific provisions of N.J.S. 3A:14A-9 eliminating any retroactive application.
The State of Pennsylvania, as a result of In re Catherwood's Trust, supra, decided on July 26, 1961, abandoned its rule of apportionment, which had been in effect since 1859, Earp's Appeal, 28 Pa. 368, and as a result adopted the simplified rule in effect in Massachusetts and incorporated in the uniform act referred to.
The so-called Pennsylvania rule, with variations, was for many years followed in this country by a majority of the jurisdictions. However, because of the complexity of and difficulties encountered with and in applying the rule, the trend in recent years has been to substitute therefor the Massachusetts rule.
The Pennsylvania rule recognized an "apportionable event" to occur in four situations: (1) the distribution by a corporation of an extraordinary cash or stock dividend; (2) the liquidation of the corporation; (3) the sale of the stock by the trustee; (4) the issuance of stock rights.
Under the Pennsylvania rule the rights of the life tenant and the remaindermen as to extraordinary cash or stock dividends declared during the life tenancy were determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at the testator's death, or in the case of an inter vivos trust, at the time of its creation, and the real effect of the rule is to give to the life tenant the income which has been earned since the trust came into being, but at the same time save the value of the corpus.
*316 The Pennsylvania court decided that under present conditions the application of the rule was so complex and burdensome and required taking into consideration so many time periods in applying the rule, requiring the application of three apportionment formulas that the situation had become an apportionment morass which required simplification under present economic conditions. As a result, the Pennsylvania rule is now a misnomer.

THE MASSACHUSETTS RULE.
This is a simple rule of convenience and was adopted by the State of Massachusetts in Minot v. Paine, 99 Mass. 101 (Sup. Jud. Ct. 1868). Under the rule, simply stated, all cash dividends are awarded to the life tenant or beneficiary, and all stock dividends are awarded to the remaindermen.
The Massachusetts rule has been followed by Connecticut, Georgia, Illinois, Maine, North Carolina, Rhode Island, West Virginia and the United States Supreme Court. See 24 A.L.R. 29. It was also the English rule.
In a prefatory note to the Uniform Principal and Income Act, the Commissioners made the following statement:
"When the first draft of the act was presented, the Conference voted to follow the so-called Massachusetts rule of awarding cash dividends on corporate stock to income and share dividends to principal, thereby rejecting the Pennsylvania rule, or one of the several variations of it, requiring some apportionment between the two funds. Experience has shown that, however praiseworthy the intent, the latter rule is unworkable, since neither trustee nor court has the means to value the corporate assets in such way as to secure the fair adjustment aimed at. Consequently the majority of the large commercial states have already favored the former and more convenient rule * * *."

THE KENTUCKY RULE.
This rule is a variation of the Massachusetts rule, in that a dividend, whether stock or cash, goes to the person entitled to receive the income at the time the dividend is declared, without regard to the date earned. In re Catherwood's Trust, supra.
*317 The history of the apportionment rule applied in this State is amply reviewed in In re Wehrhane's Estate, 41 N.J. Super. 158 (Ch. Div. 1956), and commented upon in In re Terhune's Estate, 50 N.J. Super. 414 (App. Div. 1958). Basically, the cases establish the principle that the shares distributed under a stock dividend represent not only a return of earnings but also a return of principal. The dividend becomes part of the corpus and vests in the remaindermen, subject to a charge against them in favor of the life tenant. Such a charge is designed to represent the share of the life tenant's money which, in effect, went into the purchase of the shares  that is, earnings transferred to support the dividend and representing earnings accumulated during the pendency of the life interest. It is also necessary to determine whether the corporate transfers supporting the dividend were earnings and unavailable for future dividends; also whether they represent earnings accumulated during the effective period of the life tenancy.
Under present-day corporate financing, and increasing attention to the tax situation rather than the trust situation, it becomes a very complex, time-consuming and expensive job for the trustee, attorney and accountant to determine with any reasonable certainty the equitable apportionment involved. This also can apply in some cases to even stock splits if the rule is to be strictly applied. As stated in Terhune, "paraphrased, it is necessary to determine whether any funds which could benefit the life tenants in the future have been irrevocably transferred to an account, the proceeds of which will redound solely to the benefit of the remainderman."
The Pennsylvania rule was first looked upon with favor in this State in Van Doren v. Olden, 19 N.J. Eq. 176 (Ch. 1868), and the rule adopted and generally followed in this State down through the years is the following:
"That principle is, that where trust funds, of which the income, interest, or profits are given to one person for life, and the principal bequeathed over upon the death of the life tenant, are invested *318 either by the trustees, or at the death of the testator, in stock or shares of an incorporated company, the value of which consists in part of an accumulated surplus or undivided earnings laid up by the company, as is frequently the case, such additional value is part of the capital; that this, as well as the par value of the shares, must be kept by the trustee intact for the benefit of the remainderman; but the earnings on such capital, as well as upon the par value of the shares, belongs to the life tenant. And when an extra dividend is declared out of the earnings or profits of the company, such extra dividend belongs to the life tenant, unless part of it was earnings carried to account of accumulated profits or surplus earnings at the death of the testator, or at the time of the investment if made since his death, in which case so much must be considered as part of the capital."
The above cited case indicates that the rule being adopted is contrary to the English rule and also the Massachusetts rule. In McCracken v. Gulick, 92 N.J. Eq. 214 (E. & A. 1920), the rule is again stated in the following language:
"What is necessary is an equitable rule for the ascertainment of the respective interest of life tenant and remainderman in surplus which has been converted into capital stock. To use the language of the Vice-Chancellor, in Day v. Faulks, the company `has made a disposition' of the earnings to that extent. We still think the rule in Day v. Faulks is equitable. It gives the new capital stock to the estate but subject to a charge in favor of the life tenant of the amount of his money used to pay for the stock, usually the par value. This gives protection to the estate against the possibility of a reduction in the value of the shares and it gives the life tenant the cash out of earnings accrued during his life estate which the directors have applied irrevocably to the capital of the corporation, so that not even the courts can hereafter force the distribution of that cash in the form of a dividend. The practical working is shown by the decree of this court in Day v. Faulks. It adjudges: `That the life tenants under said will are entitled to an interest in said stock so received by said trustee equivalent to their share of the said earnings which it was intended to capitalize and which were capitalized as aforesaid and that the complainant as such trustee is entitled to all residuum of interest in said stock, such residuum representing capital of the company, in esse as such, when such dividend was declared and therefore belonging to the principal of the trust fund; and that the life tenants are entitled to have their share of said earnings charged on said stock and so much of said stock sold as may be necessary to satisfy the charge and so enable them to realize their interest therein.' This rule has the merit of simplicity; it protects the corpus against wasting by stock dividends, and gives the life tenant that portion of the earnings irrevocably taken from the life tenant to pay for the new stock; he loses the advantage of securing *319 market value for the stock when it is at a premium. That market value goes to the corpus if the trustee chooses to sell to satisfy the charge."
Down through the years, as a result of changing economic conditions and the increased complexity of corporate accounting and financing, and the general changes in the practices of such, partially resulting from greater attention's being given to tax factors, the necessity of enhancing and broadening the market for corporate common stocks, resulting from the continued increase of the per share value thereof with a resulting reduction in the income percentage received therefrom and making the stock less and less attractive from a strictly investment standpoint and the increasing tendency by trustees in investing in common stocks with statutory sanction, stock splits and extraordinary dividends have been encouraged and have become very common, resulting in financial transfers within a corporate setup to support such issues  all in all making the application of the apportionment rule complex, very difficult and expensive, and on occasions well nigh impossible as far as equitable application. A reading of the cited cases in this State and the cases referred to therein will indicate the inconsistencies and difficulties that have arisen under this rule. The situation has also arisen in other states, resulting in a gradual abandoning of the apportionment rule in favor of the uniform rule herein mentioned, commonly referred to as the Massachusetts rule. In view of the difficulties commented upon and the increasing cost to trust estates to determine the apportionment, it is doubtful if the rule is any longer equitable, which initially was the very basis for its creation.
As indicated in the accounting under Schedule C, the apportionment was made under the rule set forth in Wehrhane, and in Schedule D the apportionment was made under Terhune. Applying the rules set forth in the cases referred to results in different totals and points up the problem insofar as the trustee is concerned. Under Schedule C $76,027.64 would be apportioned in favor of *320 the life tenant, and under Schedule D $42,360.68 would be apportioned in favor of the life tenant.
It has been suggested by the remaindermen that this court abandon the apportionment rule and substitute therefor the Massachusetts rule, which in effect is the uniform rule, because of the difficulties referred to and the general tendency in the courts of the several states to abandon the rule because basically it has outlived its usefulness under the present economic situation and present-day corporate financing and accounting. It must be evident from this court's remarks in this opinion, that it believes the apportionment rule to be no longer an equitable one and poses serious, and eventually insurmountable, problems in application for fiduciaries, and really is not workable any longer. However, this is a trial court and its basic function is to follow the law as established and leave to appellate tribunals the responsibility of determining what and when, if at all, change is warranted, otherwise only confusion and uncertainty in the administration of justice would result.
There was expert testimony in this case. However, to rely on such expert testimony in arriving at any apportionment, because of the conflicting opinions on the part of the experts and also the text authorities and the constant changing and shifting of these opinions, can only create further uncertainty and more confusion. Ballantine v. Young, 79 N.J. Eq. 70 (Ch. 1911). It is also in such cases a substantial expense burden on the estate.
The court concludes that the trustee properly followed the apportionment rule laid down in In re Terhune's Estate, supra, as indicated in the computation set forth in Schedule D attached to the accounting. The cited case is the last word from an appellate tribunal on the subject matter, and the court concludes that it should be followed by the trial court for the reasons indicated.
The court desires to compliment all counsel on the presentation of the matter to the court, and particularly for the very thorough briefs presented analyzing the problem, the various rules and cases involved.
*321 An order may be presented, on notice to the remaindermen and the life tenant or with the consent of their counsel as to form affixed thereto, authorizing the trustee to apportion the stock splits and stock dividends as set forth in Schedule D of the accounting.
The trustee seeks further instructions as to whether the life tenancy or the remaindermen should bear, or whether there should be an apportionment concerning, any income tax arising from the sale of any of the corpus of the trust required for the purposes of accomplishing the apportionment. Apportionment of expenses is generally discussed in Scott, Abridgement of the Law of Trusts, § 237, p. 487. Under the rule of apportionment which is in effect in this State, as indicated in the cited cases, the split or stock dividend becomes part of the corpus and there is a charge against the corpus in favor of the life tenant, and it is the obligation of the trustee to relieve from the corpus such charge in the amount as determined by the apportionment. Also, the corpus benefits from any appreciation and should, on the one hand, not retain the fruits thereof and, on the other hand, look to the life beneficiary for the contribution as to the expenses. Any expense incidental to or involved in relieving the corpus of the charge mentioned against it, it appears to this court, is properly the responsibility and obligation of the remaindermen and chargeable against corpus.
As to the apportionment itself, the share of the life tenant being income is reported as such by her, and the share of the remaindermen is already part of the corpus and will be affected by future gains or losses from a capital standpoint. This court cannot bind federal authority, and their rulings will be controlling from an income tax standpoint. For tax purposes, of course, the apportionment should occur in the year the split or dividend is received, and this points up again a difficulty in applying the apportionment rule, the first shares involved here having been received in 1947.